**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 13-2116 and 13-4161
_____

MARYANN ANDERSON,

Appellant

v.

BOARD OF SCHOOL DIRECTORS OF THE MILLCREEK TOWNSHIP SCHOOL
DISTRICT; SUSAN SULLIVAN; DEAN MAYNARD; REBECCA MANCINI
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 1-07-cv-00111)
District Judge:  Hon. Arthur J. Schwab

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 8, 2014

Before:  RENDELL, CHAGARES, and JORDAN, Circuit Judges.

(Filed: July 17, 2014 )

_____

OPINION
_____

CHAGARES, Circuit Judge.

Maryann Anderson, a former administrator in the Millcreek Township School

District ("MTSD") in Pennsylvania, filed this civil action against Rebecca Mancini

(former MTSD administrator), Dean Maynard (former MTSD Superintendent), and

Susan Sullivan (former member of the MTSD School Board). Anderson alleged that the defendants retaliated against her for her whistleblower activities, in violation of 42 U.S.C. § 1983 and the Pennsylvania Whistleblower Law, 43 Pa. Cons. Stat. § 1421. She now appeals three orders of the District Court: (1) the grant of the defendants' summary judgment motion; (2) the denial of Anderson's motion for sanctions; and (3) the denial of Anderson's motion for reconsideration. For the reasons stated below, we will affirm all three orders of the District Court.

I.

We write exclusively for the parties and therefore set forth only those facts that are necessary to our disposition.[1]

A.

Anderson was employed by the MTSD from 1996 until July 2009. From 1996 to July 2006, she served as the Supervisor of Special Education and Student Services. In August 2006, Mancini replaced Anderson in that position. Anderson then became the Director of Personnel at MTSD until July 2009. At all times relevant to this action, Maynard was the Superintendent of MTSD, while Sullivan served on the MTSD Board.

In her capacity as Supervisor of Special Education and Student Services, Anderson oversaw the administration of the Pennsylvania Department of Education's School-Based ACCESS Program ("ACCESS") at MTSD. ACCESS is a medical assistance program which provides partial reimbursements to school entities for eligible health-related

---

[1] We note that the District Court provided a detailed and thorough recitation of the facts in its March 26, 2013 opinion. See Anderson v. Bd. of Sch. Dirs., 2013 WL 1289399 (W.D. Pa. Mar. 26, 2013).

services given to Medicaid-eligible special education students. School districts must use funds received through the program to enhance existing special education services.

When Mancini became Supervisor of Special Education and Student Services, she took over Anderson's responsibilities with respect to ACCESS. Within the first two weeks of her employment, Mancini developed concerns about what she perceived as improper billing practices carried out under Anderson's administration of ACCESS. Mancini relayed these concerns to both Maynard and Sullivan.

Meanwhile, in January 2007, Maynard sent a personal e-mail that did not reach its intended recipient, but instead came into the possession of an MTSD teacher. The letter suggested that Maynard planned to take a cruise with two individuals whom he had recommended for work in the MTSD. Maynard subsequently received an anonymous letter referring to this e-mail and urging Maynard to resign as Superintendant. Maynard requested that Richard Perhacs, an attorney and a solicitor for MTSD, conduct investigations into both ACCESS and the anonymous letter.

On Friday, March 16, 2007, Maynard asked Tom DelFratte, the Supervisor of Technology at MTSD, to obtain Anderson's laptop computer, but Anderson was not present that day. Maynard then called Anderson at home and asked to meet her the following day (Saturday) to secure the computer. Instead, Anderson and her husband met Timothy Sennett, a solicitor for MTSD, to hand over the computer that day. When they met with Sennett, Anderson stated to him that "she suspected that [Maynard] wanted her computer to engage in wrongdoing, i.e. so that he could erase digitized files . . . to thwart a [Board] investigation of [Maynard]." Appendix ("App.") 398. Anderson also indicated

3

that she believed Maynard was going to place the anonymous letter onto her computer hard drive.

In a memorandum dated March 19, 2007, Perhacs reported to the MTSD Board that "almost from the inception of the Access Program approximately seven years ago, the District has been submitting for credit to its Access account various expenditures which were not appropriate." App. 914. Perhacs also explained that he had arranged to have examined seven computer hard drives of those suspected of having sent the anonymous letter, including Anderson.

On March 28, 2007, Anderson's counsel, Charles Steele, gave a letter to Perhacs indicating that Anderson was preparing a report of waste and wrongdoing under the Pennsylvania Whistleblower Law. In the letter, Steele, on behalf of Anderson, alleged that Maynard: (1) failed to disclose his personal relationships with certain individuals whom he had recommended for hire; (2) failed to supervise these individuals prudently; (3) attempted to hide or destroy evidence pertaining to these relationships; (4) harassed Anderson for doing her job in accordance with standard procedures; and (5) was carrying out an "ill conceived and pernicious" investigation of ACCESS. App. 203-04.

On April 19, 2007, Anderson met with Perhacs to supplement the information provided in the March 28 letter. In this "Supplemental Whistleblower Report," Anderson referenced the ongoing investigation into her administration of ACCESS and argued that it was a waste of MTSD resources. She also stated that "[Sullivan] has been on a campaign to oust [Anderson] from the District," which "has also resulted in waste of the District resources in conjunction with the Access Investigation." App. 205-06.

4

On May 8, 2007, the MTSD Board halted Perhacs' internal investigation of ACCESS and referred the matter to Commonwealth agencies. The United States Department of Justice also participated in the investigation. On May 18, 2012, the Pennsylvania Department of Auditor General published a report in which it found, inter alia, that Anderson diverted ACCESS funds for non-program purposes. The MTSD Board ultimately settled this matter with the United States of America.

B.

On May 11, 2007, Anderson filed a complaint against Sullivan and Maynard; on May 31, 2007, she filed a first amended complaint, adding Mancini as a defendant. On March 2, 2008, she filed a second amended complaint, alleging, inter alia, that the defendants retaliated against her in various ways for her whistleblowing activities on March 16, March 28, and April 19, 2007, in violation of her rights under the First Amendment of the United States Constitution and the Pennsylvania Whistleblower Law.[2]

Following discovery, the defendants filed a motion for summary judgment on all of Anderson's claims. On August 29, 2009, defendants also filed a "Joint Motion for Dismissal of the Action Pursuant to F.R.C.P. 41(b) or, in the Alternative, Motion for Sanctions Pursuant to F.R.C.P. 37(b) and 37(c)(1)" ("Joint Motion for Dismissal"), accusing Anderson and her counsel of failing to produce certain documents as part of her required initial disclosures under Federal Rule of Civil Procedure 26(a)(1)(ii). On September 22, 2009, the defendants filed a "Joint Supplement to their Joint Motion for

---

[2] Anderson alleged that, as a result of her whistleblowing activities, the defendants retaliated against her by, among other things, denying her opportunities to attend certain meetings and events and reporting her to Commonwealth agencies.

5

Dismissal" ("Joint Supplement"), arguing that Anderson had engaged in extensive spoliation of documents on her MTSD-issued laptop computer. In response to the defendant's Joint Motion for Dismissal and Joint Supplement, Anderson filed a motion for sanctions under Federal Rule of Civil Procedure 11. The District Court conducted an evidentiary hearing on Anderson's Rule 11 motion on January 6, 11, and 12, 2011.

On March 26, 2013, the District Court granted the defendants' summary judgment motion. Regarding the § 1983 claim, the court held that Anderson did not engage in constitutionally protected speech because she was not speaking as a private citizen. Anderson does not appeal this ruling. The District Court also exercised supplemental jurisdiction over Anderson's state law claims. It held that her March 16 and March 28 reports did not constitute reports of "wrongdoing" under the Whistleblower Law.[3]

On August 2, 2013, prior to ruling on Anderson's Rule 11 motion, Chief Judge McLaughlin, who had been presiding over this action since its inception, announced his plan to resign from the federal bench on August 16, 2013. On August 16, 2013, the court issued an order denying Anderson's Rule 11 motion.

On August 27, 2013, Anderson filed a "Motion for Reconsideration and/or Motion for Recusal," in which she contended that Chief Judge McLaughlin was obliged to recuse himself regarding Anderson's Rule 11 motion. On September 19, 2013, District Court denied this motion.

---

[3] The District Court also held that that Anderson did not satisfy her prima facie burden with respect to her April 19 report. It does not appear that Anderson challenges this ruling.

Anderson now appeals: (1) the District Court's grant of the defendants' summary judgment motion (specifically, the court's rulings on her claims under the Whistleblower Law); (2) the denial of Anderson's motion for sanctions; and (3) the denial of her motion for reconsideration.

## II.

The District Court had supplemental jurisdiction over Anderson's claims under 28 U.S.C. § 1367(a), and we have appellate jurisdiction under 28 U.S.C. § 1291. The parties agree, as do we, that Anderson's claims are governed by Pennsylvania law.

We exercise plenary review over the District Court's grant of summary judgment. Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008). That is, we "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In doing so, "we view all evidence in the light most favorable to the non-moving party." Kurns v. A.W. Chesterton Inc., 620 F.3d 392, 395 (3d Cir. 2010).

We review the District Court's denial of Anderson's Rule 11 motion and its denial of her motion for recusal for abuse of discretion. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990) (Rule 11 motion); Selkridge v. United of Omaha Life Ins. Co., 360 F.3d 155, 166 (3d Cir. 2004) (recusal motion). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Cooter & Gell, 496 U.S. at 405.

## III.

Anderson argues that the District Court erred in holding that her March 16 and 28 reports did not constitute reports of wrongdoing under the Pennsylvania Whistleblower Law.

The Whistleblower Law provides that an employer is prohibited from retaliating against an employee "regarding the employee's compensation, terms, conditions, location or privileges of employment" because of a "good faith report" of "wrongdoing." 43 Pa. Cons. Stat. § 1423(a). The term "wrongdoing" is defined in the statute as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." Id. § 1422; see also Golaschevsky v. Commonwealth, Dep't of Envt'l Prot., 720 A.2d 757, 759 (Pa. 1998) ("[P]ursuant to the plain language of [the statute], wrongdoing includes . . . violations of any federal or state statute or regulation, other than violations of a merely technical or minimal nature." (quotation marks omitted)). An employee alleging a violation of the act "must show by a preponderance of the evidence that, prior to the alleged reprisal, the employee" reported an instance of wrongdoing verbally or in writing. O'Rourke v. Commonwealth, Dep't of Corr., 778 A.2d 1194, 1200 (Pa. 2001). The employee "must come forward with some evidence of a connection between the report of wrongdoing and the alleged retaliatory acts." Id.[4]

---

[4] If the employee makes this showing, the burden shifts to the employer to establish that there was a legitimate reason for the adverse action. 43 Pa. Cons. Stat. § 1424(c). Once the employer offers such evidence, the burden shifts back to the employee to show that

Anderson's March 16 report consisted of her statements to Sennett while handing over her laptop computer to him. These statements were purely hypothetical: Anderson explained that she believed Maynard wanted to erase files and plant the anonymous letter on her computer. Anderson did not convey that Maynard violated any law, ordinance, regulation, or code of conduct – or, indeed, that Maynard had done anything wrong at all. She merely expressed her concern that Maynard might engage in certain conduct in the future. Accordingly, Anderson's statements do not constitute a report of wrongdoing under the Whistleblower Law.

Likewise, the March 28 letter did not identify a specific law, ordinance, regulation, or code of conduct that Maynard allegedly violated. In her opposition to the defendants' motion for summary judgment, Anderson asserted for the first time that Maynard's conduct would violate the Pennsylvania School Code, 24 Pa. Cons. Stat. § 10-1080, which provides that a district superintendent may be removed from office for "immorality." But even if Anderson's allegations were proven true, we agree with the District Court that the School Code is "too vague and subjective to serve as the basis for a valid whistleblower complaint." Anderson, 2013 WL at *25; cf. Riggio v. Burns, 711 A.2d 497, 501 (Pa. 1998) (holding that similar regulatory statutes were "entirely too general and vague to permit the conclusion that a violation had occurred amounting to

this reason was merely pretextual. Golaschevsky, 720 A.2d at 165 (Nigro, J., concurring).

9

'wrongdoing' under the Whistleblower Law"). Thus, we hold that these complaints do not rise to the level of wrongdoing under the Whistleblower Law.[5]

For these reasons, we will affirm the District Court's grant of summary judgment.

IV.

Next, Anderson contends that the District Court abused its discretion in denying her Rule 11 motion, in which she argued that defense counsel should be sanctioned for filing the Joint Motion for Dismissal and the Joint Supplement.

Rule 11 requires that an attorney, when filing a motion, certify "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that: (1) the motion is not being presented for any improper purpose; (2) the legal contents are nonfrivolous; and (3) the factual contents have evidentiary support, or if so identified, will likely have evidentiary support after a reasonable

---

[5] As we noted earlier, see supra n.3, it does not appear that Anderson appeals the District Court's determination that she failed to carry her prima facie burden with respect to her April 19 report. In any event, her effort would fail because there is no genuine dispute that the acts alleged as retaliation were part of a larger conflict between Anderson and the defendants that began well before the April 19 report. In fact, that report explicitly refers to the pre-existing conflict when it states that Sullivan "ha[d] been on a campaign to oust" Anderson and had "attempted to report the District's special education operations to the Department of Education and the Department of Welfare." App. 57. Anderson also concedes that the ACCESS investigation began well before April 19, 2007. Moreover, Mancini's communications with various agencies regarding the accounting discrepancies were part of her official duty; she was required to make such inquiries. Finally, the fact that Mancini and Maynard mentioned the issue during a meeting with Anderson present, which Anderson interpreted as an accusation against her, had no effect on the conditions of Anderson's employment, a requirement to prevail on a whistleblower claim. None of the additional evidence Anderson points to links the April 19 report to any of the actions claimed to be in retaliation against her. Thus, Anderson failed to make a causal connection between that report and the alleged retaliation.

Because we hold that Anderson did not make out valid whistleblower reports under the statute, we need not consider whether the defendants retaliated against her.

opportunity for further investigation or discovery.  Fed. R. Civ. P. 11(b).  Rule 11

imposes upon attorneys an affirmative duty to conduct a reasonable investigation into the

facts, and an attorney who fails to make this inquiry may be sanctioned.  Bradgate

Assocs., Inc. v. Fellows, Read & Assocs., Inc., 999 F.2d 745, 751 (3d Cir. 1993).

A district court presented with a Rule 11 motion for sanctions must determine

whether the accused attorney's conduct was "objectively reasonable under the

circumstances."  Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year

of Account, 618 F.3d 277, 297 (3d Cir. 2010) (quotation marks and citation omitted).

Sanctions are to be applied only "in the exceptional circumstance where a claim or

motion is patently unmeritorious or frivolous."  Id. (quotation marks and citation

omitted).

The District Court conducted an in-depth analysis of the defendants' claims in

their Joint Motion for Dismissal and Joint Supplement.  In support of their claims, the

defendants provided, among other evidence, an affidavit from a computer forensics

expert, who examined Anderson's hard drive and concluded that "the data stored on it,

had been significantly altered."  App. 1499.  After thoroughly considering this evidence,

the District Court concluded that "Defense Counsels' theories, as set forth in the Joint

Supplement and oral argument, were at least plausible based on the evidence initially

known to them and subsequently developed by way of additional investigation."  App.

142.

We hold that the District Court did not abuse its discretion in reaching this

conclusion.  Defense counsel provided evidentiary support for the defendants' claims,

11

such that the District Court could reasonably conclude that defense counsel fulfilled their Rule 11 obligations. The court did not apply an erroneous view of the law or base its ruling on a clearly erroneous assessment of the evidence. We see no exceptional circumstances warranting sanctions in this case.

Accordingly, we will affirm the District Court's denial of Anderson's Rule 11 motion for sanctions.

V.

Finally, Anderson argues that the District Court erred in denying her "Motion for Reconsideration and/or Motion for Recusal."

Under 28 U.S.C. § 455(a), recusal is required whenever a judge's impartiality "might reasonably be questioned." Pursuant to this statute, a judge should recuse himself where "a reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality." United States v. Dalfonso, 707 F.2d 757, 760 (3d Cir. 1983); see also Alexander v. Primerica Holdings, 10 F.3d 155 (3d Cir. 1993) (ordering reassignment of case because judge's impartiality could reasonably be questioned).

Here, Anderson points out that Chief Judge McLaughlin resigned from the federal bench as a result of his decision to serve as General Counsel for the Erie Indemnity Company ("EIC") and the affiliated companies of the Erie Insurance Group ("EIG"). Matthew McCullough, an attorney representing Mancini, is a partner at an Erie law firm which EIC/EIG employs as defense counsel in insurance and other matters. Anderson asserts that Chief Judge McLaughlin's new employment created an appearance of impropriety because of McCullough's connection to EIC/EIG.

12

Given that Chief Judge McLaughlin presided over this case for a significant length of time prior to any alleged conflict and decided all but the Rule 11 motion before accepting outside employment, the District Court found that a reasonable person would not question his impartiality. We agree, and therefore hold that the District Court did not abuse its discretion in denying Anderson's motion for recusal.

Accordingly, we will affirm the District Court's denial of Anderson's recusal motion.

## VI.

For the foregoing reasons, we will affirm the orders of the District Court.