IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aaron Sukenik,                              :
              Appellant                     :
                                            :   No. 505 C.D. 2015
        v.                                  :
                                            :   Argued: November 16, 2015
Township of Elizabeth, Gene                 :
Francesconi, J. Larry Vota, Claire          :
Bryce and Chris Evans                       :


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge[1]
           HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge


OPINION BY
JUDGE McCULLOUGH                            FILED: January 5, 2016

        Aaron Sukenik (Sukenik) appeals from the December 15, 2014 order of the Court of Common Pleas of Allegheny County (trial court), which granted summary judgment in favor of the Township of Elizabeth, Gene Francesconi, J. Larry Vota, Claire Bryce, and Chris Evans (collectively, Appellees).


                    **Facts and Procedural History**

        Sukenik was employed as the Township Manager of the Township of Elizabeth (Elizabeth) from July 3, 2012, to February 4, 2013, when he was terminated. Sukenik filed a complaint, alleging that he was terminated for reporting

_____

[1] This matter was assigned to this panel before January 1, 2016, when President Judge Pellegrini assumed the status of senior judge.

"wrongdoing" and "waste" in violation of the Pennsylvania Whistleblower Law (Whistleblower Law).[2]  Appellees filed a motion for summary judgment, alleging, *inter alia*, that Sukenik failed to adduce sufficient evidence of a "wrongdoing" or "waste" as defined under the Whistleblower Law.  The trial court held a hearing and granted Appellees' motion.

The facts giving rise to this dispute may be summarized as follows.  On March 19, 2012, Elizabeth's Board of Commissioners (Board) enacted Township of Elizabeth Ordinance No. 891 (Ordinance), which created the Office of Township Manager.  The Ordinance provides that the Township Manager is the Chief Administrative Officer of Elizabeth and serves at the pleasure of the Board.  Among other things, the Township Manager's duties consist of supervising the administration of all township departments, offices, and agencies; preparing and submitting budgets and financial statements to the Board; generating reports on the finances and activities of Elizabeth; superintending and managing all day-to-day fiscal affairs of Elizabeth; and "attend[ing] all Board of Commissioner's meetings" and "tak[ing] part in discussions."  Sukenik was hired as Elizabeth's Township Manager on July 3, 2012.  (R.R. at 48a-51a.)

During his tenure, Sukenik became drawn into a dispute between the president of the Board, Gene Francesconi, and the chief of police, Robert McNeilly.  Sukenik described the relationship between Francesconi and McNeilly as troubled because Francesconi served as the interim chief of police before the Board ultimately hired McNeilly over Francesconi.  After McNeilly's hiring, Francesconi returned to his former position as sergeant for the police department but resigned within one year of McNeilly's hiring.  Francesconi was subsequently elected to the Board and took

---

[2] Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§ 1421-1428.

2

office in January 2012. Francesconi was president of the Board when Sukenik was hired as Township Manager. (R.R. at 111a, 210a-13a, 227a-29a.)

According to Sukenik, Francesconi attempted to micromanage police affairs and use Sukenik to disrupt McNeilly's administration of the police department. Sukenik identified three instances where Francesconi unilaterally directed him to oppose McNeilly's decisions: (1) McNeilly's assignment of specific officers to perform follow-up investigations to attempt to resolve open police investigations; (2) McNeilly's proposal to send two officers to Kentucky for internal affairs investigations training; and (3) McNeilly's use of a "take-home car." Sukenik believed that Francesconi's opposition to McNeilly was improper retaliation and that commissioners Bryce, Evans, and Vota were acting in concert with Francesconi to sabotage McNeilly's efforts as chief of police. (R.R. at 100a-07a, 192a.)

Sukenik complained of Francesconi's unilateral interference with the police department on five occasions.

First, in October 2012, Sukenik complained to Commissioner Thomas that Francesconi was pressuring him to interfere with McNeilly's operation of the police department and that he planned to express his concerns to Elizabeth's solicitor, Patricia McGrail. (R.R. at 296a-99a.)

Next, after the Board's public meeting on January 7, 2013, Sukenik, McGrail, and Commissioners Francesconi, Bryce, Evans, and Vota remained and Francesconi "berat[ed]" Sukenik, demanding that the investigation assignments be stopped, that the officers not go to Kentucky for training, and that McNeilly's "take-home car" be taken from him. (R.R. at 107a.) At that time, Sukenik stated to McGrail that "[Francesconi] can't do this. . . . [T]his is not the right place for this." (R.R. at 107a.)

3

On January 15, 2013, Sukenik contacted McGrail by telephone and advised her that Francesconi did not have the authority to unilaterally interfere with the police department's operations. McGrail confirmed that individual commissioners do not have the authority to unilaterally dictate the police department's operations, but advised Sukenik that Francesconi may be acting on behalf of the Board. Sukenik informed McGrail that he believed Francesconi's actions against McNeilly could constitute political retaliation because of his history with McNeilly. Sukenik suggested that a Police Committee meeting was the appropriate forum to consider Francesconi's objections to McNeilly's directives. After their conversation, McGrail contacted Francesconi and they agreed that Francesconi's concerns regarding McNeilly's decision-making could be discussed at an upcoming Police Committee meeting. (R.R. 108a-11a, 318a-20a.)

On January 22, 2013, Sukenik and McNeilly attended a Police Committee meeting that was held to discuss a pending disciplinary action against a township police officer.[3] After the disciplinary issue was resolved, Sukenik attempted to communicate his concerns that Francesconi's unilateral interference with police department operations was improper and unlawful, and also to inquire whether the committee agreed with Francesconi's assessment that McNeilly's directives should be stopped. However, Commissioner Vola interjected and stated that it would be more appropriate for Sukenik's concerns to be brought before the full Board. (R.R. at 108a-114a.)

---

[3] Elizabeth's Police Committee was comprised of Commissioners Thomas, Evans, and Vota. Francesconi did not attend the meeting.

On January 30, 2013, the Board conducted a special meeting to hold a public vote on the proposed disciplinary action against the township police officer. Before the special meeting, the Board met in executive session and Francesconi dismissed Sukenik and McNeilly from attendance. Because he was precluded from expressing his concerns regarding Francesconi's conduct to the Board at the executive session, Sukenik drafted a letter to the Board dated February 1, 2013, and reiterated his concerns about being asked to interfere with police operations. In the letter, Sukenik stated that he believed the interference with the police department violated township ordinances and state and federal laws. (R.R. at 52a, 118a-22a.)

In addition to his complaints regarding Francesconi's attempts to unilaterally interfere with the police department, Sukenik objected to the Board's proposal to conduct a forensic tax audit as a substantial waste of taxpayer funds.

On December 10, 2012, at the Board's regularly scheduled meeting, Commissioner Bryce made a unilateral request for a forensic audit of Elizabeth's complete financial records for a four-year period and a majority of the Board passed Bryce's motion. Subsequently, Sukenik obtained information regarding a forensic audit and determined that it would be extremely costly and time consuming because the Board's directive was vague and did not identify specific areas of concern or include any defined parameters. In addition, Sukenik did not believe a four-year forensic audit was warranted because an independent certified public accounting firm performed annual audit reports for Elizabeth for the years in question and those reports indicated that Elizabeth was in sound financial position. Accordingly, Sukenik advised the Board that it should reconsider its decision because a four-year forensic audit would constitute a significant and unnecessary waste of taxpayer funds. The Board ultimately abandoned the four-year forensic audit. (R.R. at 305a-08a.)

On February 4, 2013, a majority of the Board voted to terminate Sukenik.

On September 6, 2013, Sukenik filed a complaint against Appellees alleging violations of the Whistleblower Law and the Wage Payment Collection Act.[4] On November 12, 2013, Appellees filed preliminary objections to Sukenik's wage payment claim. On December 2, 2013, Sukenik amended his complaint to withdraw his wage payment claim and instead asserted a breach of contract claim. On December 9, 2013, Appellees filed preliminary objections in the nature of a demurrer to the breach of contract claim, arguing that Sukenik could not assert a breach of contract claim in this matter. On January 31, 2014, the trial court sustained Appellees' preliminary objections and dismissed Sukenik's breach of contract claim. On October 29, 2014, Appellees filed a motion for summary judgment, arguing that Sukenik failed to establish a whistleblower claim because he did not make a "good faith report" of "wrongdoing" or "waste" under the Whistleblower Law. On December 15, 2014, the trial court granted Appellees' motion for summary judgment because it concluded that Sukenik did not report "wrongdoing" or "waste" sufficient to establish the essential elements of a whistleblower claim. (R.R. at 70a.)

On appeal to this Court,[5] Sukenik alleges that the trial court erred when it concluded that he did not report a "wrongdoing" because Francesconi's unilateral

---

[4] Act of July 14, 1961, P.L. 637, *as amended*, 43 P.S. §§ 260.1-260.45.

[5] When reviewing a trial court's grant of summary judgment, this Court's standard of review is de novo and our scope of review is plenary. *Pentlong Corporation v. GLS Capital, Inc.*, 72 A.3d 818, 823 n.6 (Pa. Cmwlth. 2013). A motion for summary judgment is appropriate if "there is no genuine issue of any material fact as to a necessary element of the cause of action." Pa.R.C.P. No. 1035.2(1). A grant of summary judgment is proper only when, "after examining the record in the light most favorable to the non-moving party, and resolving of all doubts as to the existence of a **(Footnote continued on next page…)**

interference with the police department violated section 1405 of Pennsylvania's First Class Township Code (Code).[6] Sukenik also alleges that his exclusion from the Board's executive session violated the Ordinance and constituted a "wrongdoing." Finally, Sukenik argues that the trial court erred when it concluded that his opposition to the forensic tax audit did not constitute a good faith report of "waste."

## Discussion

Section 3 of the Whistleblower Law, Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §1423(a), protects employees who make a "good faith report" of a narrowly-defined "wrongdoing" or "waste." Section 2 of the Whistleblower Law provides that a "good faith report" is "a report of . . . wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." 43 P.S. §1422. Section 2 defines "wrongdoing" as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." *Id*. "Waste" is "[a]n employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." *Id*. To establish a prima facie case under the Whistleblower Law, the plaintiff must prove by a preponderance of the evidence that he made a good

---

**(continued…)**

genuine issue of material fact against the moving party, the moving party is clearly entitled to judgment as a matter of law." *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011).

[6] Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. §56405.

7

faith report of wrongdoing or waste to the appropriate authorities prior to the alleged retaliation. *O'Rourke v. Commonwealth*, 778 A.2d 1194, 1200 (Pa. 2001).

To establish a whistleblower claim, a report must specify how an employer is guilty of wrongdoing or waste. *Gray v. Hafer*, 651 A.2d 221, 225 (Pa. Cmwlth. 1994), *aff'd*, 669 A.2d 335 (Pa. 1995). To constitute a wrongdoing, the violation must be one that the employer is charged to enforce for the public good or relate to the internal administration of the public employer.[7] *Id*. at 225. The report must provide information that is sufficient to identify the law allegedly violated; reports of vague or subjectively wrong conduct are not considered wrongdoing under the Whistleblower Law. *Riggio v. Burns*, 711 A.2d 497, 501 (Pa. Super. 1998). The test is objective; it is irrelevant whether an employee believes the employer's conduct constitutes wrongdoing, an actual violation is required. *Kimes v. University of Scranton*, __ F. Supp. 3d __ (M.D. Pa., Civil No. 3:14-CV-00091, filed Aug. 25, 2015), slip op. at 20. The law that the employer violated must specifically define some prohibited conduct or it cannot be violated in a way that constitutes a "wrongdoing." *Evans v. Thomas Jefferson University*, 81 A.3d 1062, 1072 (Pa. Cmwlth. 2013); *Riggio*, 711 A.2d at 501-03.

---

[7] The Whistleblower Law defines an "employer" as "[a] public body or any of the following which receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body: (1) [a]n individual; (2) [a] partnership; (3) [a]n association; (4) [a] corporation for profit; (5) [or a] corporation not for profit." 43 P.S. §1422.

8

**Wrongdoing**

Sukenik alleges that his complaints regarding Francesconi's unilateral interference with the police department constitute reports of "wrongdoing" because Francesconi's conduct violated the Code,[8] which states:

> The chief of police and policemen shall obey the orders of the board of township commissioners or such other person or committee as may be designated by ordinance or resolution of the board for such purposes.

53 P.S. §56405. Sukenik argues that the Code prohibits Francesconi's unilateral interference with the police department because he was not issuing orders on behalf of the Board or the Police Committee, nor was he designated by special ordinance or resolution to perform such action.

This Court's decision in *Evans v. Thomas Jefferson University*, 81 A.3d 1062 (Pa. Cmwlth. 2013) is instructive. In *Evans*, a dispensing nurse at an addiction and rehabilitation clinic refused to administer methadone to a patient because she believed that the patient was intoxicated. The patient became angry and complained to the program director. The program director directed the clinic director to ask the nurse to administer the methadone, but the nurse refused. At the program director's direction, the clinic director administered the methadone and, after she left, the nurse reported the program director's conduct to her supervisor. The nurse was ultimately terminated and she filed a whistleblower action, alleging that she was terminated in retaliation for reporting the program director's conduct, which allegedly violated federal and state law regulating who may administer controlled substances to patients.

---

[8] The parties stipulate that Elizabeth is a First Class Township bound by the First Class Township Code. (Appellant's brief at 21.)

The trial court granted the employer's summary judgment motion and the nurse appealed.

On appeal, this Court held that the provisions the nurse cited permitted licensed individuals to administer methadone, but they did not prohibit the conduct she reported; specifically, the program director's override of the nurse's assessment that the patient was intoxicated and command to the clinic director to administer the methadone. Consequently, because the complained of conduct was not prohibited, we affirmed the trial court's order granting summary judgment for the employer because the nurse did not report a "wrongdoing" under the Whistleblower Law and, thus, could not prove the essential elements of a whistleblower claim. *Id*. at 1072.

Similarly, in *Riggio v. Burns*, 711 A.2d 497 (Pa. Super. 1998), the plaintiff was a neurologist employed as an instructor by the Medical College of Pennsylvania, where she also served as Associate Director for the college's epilepsy center. Several patients from the epilepsy center were referred to the college's neurology department for surgery where electronic strips were placed on the patients' brains. During these surgeries, the supervising surgeon was not physically present and allowed residents to insert the electronic strips. Consequently, one patient died and another lapsed into a coma. The plaintiff opposed this procedure and demanded that the supervising surgeon perform the procedures himself or be physically present to supervise the residents. However, the supervising surgeon did not modify his procedure and the plaintiff sent a letter to the college's Vice President of Clinical Affairs objecting to the practice. The plaintiff was subsequently terminated and filed a whistleblower action, alleging that she was terminated in retaliation for her report objecting to the surgical procedures.

The trial court granted the employer's motion for summary judgment, holding that the college was not an "employer" under the Whistleblower Law. The Superior Court affirmed the trial court's order on other grounds; the college was an "employer" as contemplated by the Whistleblower Law, but the plaintiff did not report a "wrongdoing." The plaintiff cited licensing statutes for health care providers and medical practitioners to support her claim that she reported "wrongdoing." However, the court held that the regulatory statutes provided only general licensing requirements and were too general and vague to constitute wrongdoing because they were subject to interpretation and did not specifically define what conduct was proscribed. *Id*. at 501. The plaintiff also cited a Medicare regulation stating that the attending physician must supervise a resident performing major surgery to be eligible for Medicare reimbursement. However, the court rejected her argument, stating that "[the regulation] neither created a duty to supervise in person nor prohibited surgery in the absence of such personal supervision. Therefore, the regulation simply could not be *violated* as contemplated by the Whistleblower Law." *Id*. at 503 (emphasis in original).

Here, Sukenik's argument that his objections to Francesconi's unilateral interference with the police department constitute a good faith report of "wrongdoing" fails for the same reasons articulated in *Evans* and *Riggio*. "Under the provisions of the Code, (53 P.S. [§]56405), the Board of Township Commissioners are given the power of supervision of the police." *Banks v. Board of Commissioners of Upper Moreland Township*, 298 A.2d 923, 925 (Pa. Cmwlth. 1973). Section 1405 establishes a default chain of command that directs the police department to obey the Board's orders or those of an individual or committee designated by resolution or ordinance. It grants the Board authority to give orders to the chief of police and

police officers, or designate that authority to another person or committee. As in *Evans*, section 1405 does not prohibit the conduct Sukenik allegedly reported; specifically, an individual commissioner unilaterally interfering with police department operations. As in *Riggio*, section 1405 does not specifically define what conduct is proscribed. It imposes no duty on individual commissioners to refrain from unilateral interference with the police department, nor does it prohibit such activity. Consequently, Francesconi's unilateral interference with the police department does not violate section 1405 as contemplated by the Whistleblower Law.

Next, Sukenik argues that his February 1, 2013 letter to the Board constitutes a report of "wrongdoing" because his exclusion from the Board's executive session violates the Ordinance.[9] The relevant section of the Ordinance states:

> [The Township Manager] shall attend all Board of Commissioner's meetings and shall have the right to take part in discussions, but he/she shall not vote. He/she shall prepare the agenda of each meeting and shall post same at the Township bulletin board at least twenty-four (24) hours before the meeting.

(R.R. at 51a.)

Sukenik's February 1, 2013 letter reads as follows:

> This letter is to serve as a follow-up to the many conversations we have had, and to reiterate my position regarding several actions the Board has asked me to take in regard to the Police Department. Specifically, I have raised – and am now raising again – my belief and concern that these actions are in violation of relevant township

---

[9] Notably, Sukenik did not allege violations of the Ordinance in his February 1, 2013 letter. (R.R. at 52a.)

12

> ordinances and multiple laws regarding local government bodies in the Commonwealth of Pennsylvania, up to and including The Sunshine Act[10] and The Civil Rights Act.[11]

(R.R. at 52a.)

In his February 1, 2013 letter, Sukenik makes no mention of his exclusion from the Board's executive session.[12] Indeed, he states that the purpose of his letter is to "reiterate [his] position regarding several actions the Board has asked [him] to take in regard to the Police Department" and his belief that "these actions are in violation of relevant township ordinances and multiple laws regarding local

---

[10] 65 Pa. C.S. §§ 701-716.

[11] 42 U.S.C. §§ 1981-2000h-6.

[12] In *Johnson v. Resources for Human Development, Inc.*, 789 F. Supp. 2d 595 (E.D. Pa. 2011), the plaintiff was the director of her employer's adolescent employment services program. The plaintiff learned that a coworker was engaged in a sexual relationship with an underage individual who participated in the program and believed the coworker's conduct was inappropriate and was prohibited by the employer's policy regarding employees' relationships. She communicated her concerns to her supervisor and also stated that the coworker's behavior was inappropriate because she was "[h]aving sex with a consumer that was underage." *Id.* at 598. The plaintiff was terminated five years later and initiated a whistleblower action, alleging that her termination was a retaliatory discharge for reporting her coworker's wrongdoing. However, in her civil complaint, the plaintiff did not address her report of her coworker's conduct, but instead alleged that her employer violated the law by failing to take any action in response to her report regarding her coworker's relationship with a minor.

The court granted the employer's summary judgment motion and concluded that "[b]ecause Plaintiff never reported Defendants, their actions subsequent to her report are irrelevant in identifying the wrongdoing that she reported and for which she now seeks protection." *Id.* at 602. In other words, although the plaintiff made a report regarding her coworker's alleged misconduct, she made no report *regarding her employer's response* to her report, which was the basis for her civil complaint. The misconduct she alleged in her civil complaint was not the same misconduct she reported. Accordingly, summary judgment was appropriate because the plaintiff failed to report the wrongdoing she was alleging and, consequently, could not establish the essential elements of a whistleblower claim. *Id.* at 601-02. Here, although Sukenik reported some conduct in his February 1, 2013 letter, analogous to the plaintiff in *Johnson*, Sukenik never reported the conduct that was the basis for his complaint; specifically, his exclusion from the Board's executive session.

government bodies in the Commonwealth of Pennsylvania, up to and including The Sunshine Act and The Civil Rights Act." (R.R. at 52a.) It is clear that Sukenik's February 1, 2013 letter only considered Francesconi's unilateral attempts to interfere with the police department as misconduct. He stated that the letter was a follow-up to previous conversations concerning actions he was asked to take *in regards to the police department* and his belief that "these actions" violated various laws. The only actions the letter contemplates are the interference with the police department, not his exclusion from the Board's executive session. Consequently, Sukenik did not report a wrongdoing under the Whistleblower Law because he failed to report the complained of conduct.

Assuming arguendo that Sukenik's February 1, 2013 letter constitutes a report, Sukenik's argument still fails because he did not report a "wrongdoing." The Ordinance provides that the Township Manager "shall attend all Board of Commissioner's meetings." (R.R. at 51a.) However, it is not clear whether the Ordinance requires attendance at every variation of a Board meeting, such as special meetings and committee meetings, or whether the Ordinance only contemplates meetings of the full Board. The Ordinance is subject to interpretation and, as *Riggio* advises, it is not clear that such ambiguous standards can be violated in a way that constitutes "wrongdoing" under the Whistleblower Law. *Riggio*, 711 A.2d at 501.

Moreover, the Ordinance does not specifically define any prohibited conduct; it only creates the office of Township Manager and enumerates the powers and duties inherent in the position. (R.R. at 48a-51a.) The relevant section of the Ordinance grants the Township Manager access to Board meetings and requires him to prepare and post the agenda for each meeting. The Ordinance does not prohibit an

14

individual commissioner from excluding the Township Manager from attendance at the Board's executive sessions.

## Waste

Finally, Sukenik avers that his opposition to the four-year forensic tax audit constitutes a report of "waste" under the Whistleblower Law because he asserted that the audit would constitute a substantial waste of taxpayer funds. However, the Law's plain language forecloses his argument. The Whistleblower Law defines "waste" as "conduct or omissions *which result* in substantial abuse, misuse, destruction or loss of funds . . . ." 43 P.S. §1422 (emphasis added). Thus, when alleging that a substantial loss of funds constitutes waste, it is clear that some actual loss must occur.

Here, the Board abandoned the tax audit. Consequently, even if Sukenik's averment is accurate and the audit *would have* resulted in a substantial waste of taxpayer funds, no actual loss occurred because the audit was never performed. A report of hypothetical loss is insufficient to trigger the Whistleblower Law's protection. *See, e.g.*, *Anderson v. Board of School Directors of Millcreek Township School District*, 574 Fed. Appx. 169, 173-74 (3d Cir. 2014) (holding that the plaintiff's concerns that the defendant may engage in improper conduct did not constitute a report of wrongdoing under the law because the statements were purely hypothetical).

Having reviewed the record in the light most favorable to Sukenik and resolving all doubts regarding the existence of a material fact against Appellees, we conclude that Sukenik failed to establish the essential elements of a whistleblower

15

claim because he did not report a "wrongdoing" or "waste" as defined by the Whistleblower Law.

Accordingly, we affirm the trial court's order granting summary judgment in favor of Appellees.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aaron Sukenik,  
            Appellant  

            v.  

Township of Elizabeth, Gene Francesconi, J. Larry Vota, Claire Bryce and Chris Evans  

:                            No. 505 C.D. 2015

## ***ORDER***

AND NOW, this 5th day of January, 2016, the December 15, 2014 order of the Court of Common Pleas of Allegheny County is affirmed.

_____  
PATRICIA A. McCULLOUGH, Judge