IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marcel Nicole Ingram, :
              Petitioner :
               :
          v. : No. 546 M.D. 2022
               : Argued: February 6, 2024
               :
Pennsylvania House Republican :
Caucus, :
              Respondent :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE LORI A. DUMAS, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                         FILED:  March 12, 2024


Marcel Nicole Ingram (Petitioner) has filed a first amended petition for review in this Court's original jurisdiction. She asserts a claim of retaliation under the Whistleblower Law.[1] In response, the Pennsylvania House Republican Caucus (HRC or Respondent) has filed preliminary objections in the nature of a demurrer. After review, we overrule in part and sustain in part Respondent's preliminary objections and dismiss the first amended petition without prejudice.

---

[1] Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§ 1421-1428.

# I. BACKGROUND[2]

In March 2020, Petitioner was assigned by Respondent as Chief of Staff for Pennsylvania State Representative Eric Davanzo. Petitioner worked at Rep. Davanzo's district office in West Newton. In May 2022, Petitioner first detected strong, foul odors in the district office so intense that they caused Petitioner headaches and her eyes to burn. Petitioner mentioned the odors to Rep. Davanzo, who suggested that a neighbor was the source of the odors, and that Petitioner should contact the landlord.

Eventually, in July 2022, Petitioner was advised by a member of Respondent's legal counsel to purchase a mold test kit, for which she would be reimbursed, and to test for the presence of mold. Petitioner used the mold test kits and discovered the presence of mold inside the air vents. Petitioner immediately informed Rep. Davanzo of the positive mold tests but was angrily rebuffed.[3]

Thereafter, Rep. Davanzo communicated with multiple HRC members and expressed his displeasure that Petitioner performed the mold tests. He further indicated that he no longer wanted Petitioner to work for him. About a week after Petitioner detected the presence of mold, Respondent terminated Petitioner.

Petitioner then commenced this action, asserting that she was terminated by Respondent for making good faith reports of wrongdoing. According to Petitioner, Respondent engaged in wrongdoing by (1) "providing unclean, unsafe, unsanitary, and unhealthy working conditions through the presence of mold[,]" and

---

[2] We derive the following facts, which we accept as true for purposes of this disposition, from Petitioner's petition and its attached exhibits. *See* First Am. Pet. for Rev., 1/11/23; *see also Foxe v. Pa. Dep't of Corr.*, 214 A.3d 308, 310 n.1 (Pa. Cmwlth. 2019) (observing that courts reviewing preliminary objections may not only consider the facts pleaded in the petition for review, but also any documents or exhibits attached to it).

[3] Rep. Davanzo angrily asked Petitioner "Who the f*ck gave you permission to do this?" First Am. Pet. for Rev., ¶ 33.

(2) "requiring [Petitioner] to perform mold tests which were unrelated to her official job duties[.]" First Am. Pet. for Rev., ¶¶ 57, 59. Petitioner asserts that maintaining moldy premises constitutes a violation of the General Safety Law[4] and multiple sections of the International Property Maintenance Code (IPMC), which were adopted by Ordinance No. 2019-2 of the Borough of West Newton.[5]

## II. ISSUES[6]

Respondent asserts two grounds in support of its demurrer. First, according to Respondent, in reporting the presence of mold in the office, Petitioner did not allege a "wrongdoing." Prelim. Objs., ¶¶ 10, 16-20, 24. Second, Respondent

---

[4] Act of May 18, 1937, P.L. 564, *as amended*, 43 P.S. §§ 25-1 to 25-15. Petitioner miscites the relevant provision of the General Safety Law as 43 P.S. §25-29(a) which does not exist. *See* First Am. Pet. for Rev., ¶ 57. In subsequent briefing, Petitioner corrects this error. *See* Pet'r's Br. in Opp'n at 3 (citing 43 P.S. §25-2(a)). That provision states that "[a]ll establishments shall be so constructed, equipped, arranged, operated, and conducted as to provide reasonable and adequate protection for the life, limb, health, safety, and morals of all persons employed therein." Section 2(a) of the General Safety Law, 43 P.S. § 25-2(a).

[5] According to Petitioner, the relevant sections of the IPMC, adopted by Borough of West Newton Ordinance No. 2019-2, are Sections 108.1.1, 108.1.2, 108.1.3, 301.2, 302.1, 305.1, 305.3, 306.1. First Am. Pet. for Rev., ¶ 57. Petitioner asserts that Borough of West Newton Ordinance No. 2019-2 adopted the IPMC and quotes specific relevant sections of the IPMC. *See id.* Ordinance No. 2019-2 does not appear on the Borough of West Newton website, and Petitioner did not otherwise attach the full text of the ordinance. *See 2019 Ordinances*, West Newton Borough, https://mywestnewton.com/2019-ordinances/ (last date visited March 7, 2024). However, because Respondent does not challenge the validity of Ordinance No. 2019-2, we accept Petitioner's representations about the content of the ordinance. Similar to Section 2(a) of the General Safety Law, these sections of the IPMC cited by Petitioner generally require that structures and premises be maintained in a safe and sanitary condition. *See* First Am. Pet. for Rev., ¶ 57.

[6] "In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom." *Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (citation omitted). We are not required to accept as true "conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *See id.* A preliminary objection in the nature of a demurrer challenges the legal sufficiency of the pleadings. *Commonwealth v. Monsanto Co.*, 269 A.3d 623, 635 (Pa. Cmwlth. 2021). A demurrer should only be sustained if it appears with certainty that the law will not permit recovery and any doubt should be resolved by not sustaining the demurrer. *Id.*

3

objects, Petitioner has not alleged that she filed a "report" that Respondent had forced her to conduct the mold test, a task outside her official duties. *Id.*, ¶¶ 21-22, 24.[7]

### III. DISCUSSION

The Whistleblower Law protects from discharge an employee who makes "a good faith report of a narrowly defined wrongdoing or waste." *Sukenik v. Twp. of Elizabeth*, 131 A.3d 550, 555 (Pa. Cmwlth. 2016) (cleaned up); *see* Section 3(a) of the Whistleblower Law, 43 P.S. § 1423(a).[8] A "good faith report" is defined as "a report of . . . wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." Section 2 of the Whistleblower Law, 43 P.S. § 1422. "[W]rongdoing" is defined as a "violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision

---

[7] Respondent also claims that Petitioner failed to state a claim because Petitioner did not act in "good faith." Prelim. Objs., ¶ 23; Resp't's Br. at 8-9. A report is made in good faith when it is made "without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." Section 2 of the Whistleblower Law, 43 P.S. § 1422. Respondent argues that it is evident by Petitioner's "history of attendance issues and reports of phantom odors," that Petitioner's true motive was to have the district office closed so she could work remotely or "not work at all." Resp't's Br. at 9. Simply put, there are no pleaded facts in Petitioner's first amended petition to support Respondent's factual contentions or the legal conclusion the Petitioner did not make a report in good faith. Thus, at the preliminary objection stage, this argument does not warrant further analysis.

[8] Section 3(a) of the Whistleblower Law states,

> (a) Persons not to be discharged.--No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

Section 3(a) of the Whistleblower Law, 43 P.S. § 1423(a).

ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer."[9] *Id.* Further, the law allegedly violated "must specifically define some prohibited conduct or it cannot be violated in a way that constitutes a 'wrongdoing.'" *Sukenik*, 131 A.3d at 556.

## A. Wrongdoing

Respondent asserts that the laws allegedly violated do not "specifically define some prohibited conduct." Prelim. Objs., ¶¶ 10, 16-20; Resp't's Br. at 5-7 (citing *Sukenik*, 131 A.3d at 555, and *Evans v. Thomas Jefferson Univ.,* 81 A.3d 1062, 1072 (Pa. Cmwlth. 2013)). Thus, according to Respondent, Petitioner is unable to establish that the mere presence of mold on Respondent's premises violated the statute or ordinance and, consequently, Petitioner has failed to allege that Respondent committed a "wrongdoing." Prelim. Objs., ¶¶ 18-20; Resp't's Br. at 6-7.

Petitioner asserts that she has pleaded that Respondent engaged in some specifically defined prohibited conduct because she alleged that Respondent maintained "unclean, unsafe, unsanitary, and unhealthy working conditions through the presence of mold" in violation of specific statutory provisions. First Am. Pet. for Rev., ¶ 57; Pet'r's Br. in Opp'n at 2-4; Pet'r's Am. Br. in Opp'n at 2-5. Petitioner asserts that Respondent violated its statutory obligation to provide reasonable protection of her health and safety by maintaining moldy premises. First Am. Pet. for Rev., ¶ 57. Further, according to Petitioner, the extent to which Respondent's alleged legal violations constitute "wrongdoing" should only be addressed after discovery. Pet'r's Br. in Opp'n at 2-4; Pet'r's Am. Br. in Opp'n at 2-5.

---

[9] For ease of analysis, we may refer collectively to "laws" and "legal" or "statutory" violations.

Under the statute and ordinance cited by Petitioner, Respondent has a general obligation to maintain its employment offices in a condition that reasonably protects its employees' health and safety. *See* Section 2(a) of the General Safety Law, 43 P.S. § 25-2(a); Borough of West Newton, Ordinance 2019-2. It is unclear if Respondent's alleged conduct constituted a violation of the statute and ordinance. To put it simply, the statute and ordinance do not specifically prohibit maintaining moldy premises. Instead, the statute and ordinance broadly require an employer to maintain its places of employment to reasonably protect its employees' health and safety and to maintain sanitary conditions. Although it is unclear whether the alleged conduct falls under the reach of the statute and ordinance, it is possible, with further factual development, that the allegedly moldy premises constitutes a violation of Respondent's general obligation to reasonably protect its employees' health and safety. Petitioner alleged that her health was negatively impacted because the odor was so powerful that it gave her headaches and caused her eyes to burn, and that exposure to the strain of mold present in the office is linked to negative health impacts. First Am. Pet. for Rev., ¶¶ 8-9, 30.

Respondent cites two cases in support of its argument that the law cited by Petitioner does not specifically define prohibited conduct. *See* Resp't's Br. at 5-7 (citing *Sukenik*, 131 A.3d at 555 and *Evans*, 81 A.3d at 1072). In *Evans*, a nurse refused instructions from her program director to administer methadone to a patient because she assessed that the patient was intoxicated. 81 A.3d at 1065. Nevertheless, the clinic director, also a registered nurse, agreed to administer the methadone. *Id.* The nurse complained of the conduct and was later terminated. *Id.* at 1065-67. Thereafter, the nurse brought a whistleblower claim asserting that the

6

program director's conduct constituted "wrongdoing" in violation of state and federal law regulating who may administer methadone to patients.[10] *Id.* at 1072.

On appeal, following summary judgment adverse to the nurse, the *Evans* Court determined that the nurse had not reported a "wrongdoing" because the program director's conduct was not prohibited. *Id.* The relevant laws merely required that licensed individuals administer methadone; the laws did not prohibit a program director from instructing a nurse to administer methadone. *See id.* Thus, the *Evans* Court affirmed. *Id.* at 1073.

Similarly, in *Sukenik*, this Court found no clear evidence of "wrongdoing." 131 A.3d at 559. In that case, a township manager was terminated after reporting that the president of the board of commissioners had directed the manager to interfere with operational decisions of the police chief. *Id.* at 552-53. The township manager alleged that this interference violated Section 1405 of the First Class Township Code.[11] *Id.* at 556. However, while Section 1405 clearly vested authority in the board, it did not expressly prohibit "unilateral interference with the police department." *Id.* at 557.

*Evans* and *Sukenik* are distinguishable from the instant case in two important respects. First, the alleged "wrongdoing" in those cases was clearly outside the scope of the cited law. In neither case did the law prohibit specific conduct but instead defined permissible conduct. For example, in *Evans*, the law did not prohibit the program director from directing the administration of medicines;

---

[10] Essentially, the nurse complained that the program director had wrongfully overrode her assessment and, effectively, had administered the methadone himself. *Evans*, 81 A.3d at 1072.

[11] The First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. §§ 55101 – 58502. Section 1405 of the First Class Township Code states that "[t]he chief of police and policemen shall obey the orders of the board of township commissioners or such other person or committee as may be designated by ordinance or resolution of the board for such purposes." 53 P.S. § 56405.

7

instead, it identified who was permitted to administer methadone. In *Sukenik*, the law required the police to obey certain orders, but it did not prohibit the president of the board of commissioners from issuing orders to the police.

Here, it is unclear whether Respondent violated its obligations under the statute or ordinance. Although these laws do not specifically prohibit moldy premises, Respondent has a general obligation to reasonably protect its employees' health and safety. Petitioner pleaded facts alleging that her health was negatively impacted by the presence of the mold. *See* First Am. Pet. for Rev., ¶¶ 8-9, 30. Thus, it is possible, with further factual development, that maintaining moldy premises may constitute a wrongdoing under the Whistleblower Law.

Second, we find it instructive that *Sukenik* and *Evans* were decided following a period of discovery. Respondent has not cited to any cases resolved on preliminary objections. *See* Resp't's Br. at 5-7. Given the lack of clear authority sustaining a demurrer and the possible clarity brought with further factual development, we cannot say with certainty that the law will not permit Petitioner to recover. This doubt must be resolved by overruling the demurrer. *See Monsanto Co.*, 269 A.3d at 635. Thus, as it relates to Petitioner's claim that Respondent terminated Petitioner following her report that Respondent's premises were unsafe or unsanitary, Respondent's demurrer is overruled. *See id.*

**B. Report**

Petitioner further claims wrongdoing because Respondent allegedly required her to conduct the mold tests. First Am. Pet. for Rev., ¶ 59. However, Respondent objects that Petitioner never reported this as a violation of HRC ethics rules. Prelim. Objs., ¶¶ 21-22. We agree.

8

Petitioner alleges that Respondent violated Rule 2 E(3) of the Ethical and Professional Conduct Rules of the House of Representatives by requiring Petitioner to perform the mold test, a task unrelated to her official duties.[12]  First Am. Pet. for Rev., ¶ 59.  To establish a claim under the Whistleblower Law, the report of wrongdoing must have been made "prior to the alleged reprisal[.]" *O'Rourke v. Commonwealth*, 778 A.2d 1194, 1200 (Pa. 2001) (quoting Section 4(b) of the Whistleblower Law, 43 P.S. § 1424(b)).

Here, Petitioner does not allege any facts that, prior to her termination, she complained to a superior that performing a mold test was unrelated to her official duties.  *See* First Am. Pet. for Rev., ¶¶ 24-54 (describing events from when Petitioner was advised to perform the mold tests until Petitioner was terminated).  Because it is unclear whether Petitioner timely reported this alleged wrongdoing, Respondent's demurrer is sustained.  *See O'Rourke*, 778 A.2d at 1200; *Monsanto Co.*, 269 A.3d at 635.

However, Petitioner could potentially allege additional facts that would correct this omission.  Because Petitioner could potentially state a legally sufficient claim with a more specific pleading, we grant Petitioner leave to amend her petition for review.  *See Gray v. Hafer*, 651 A.2d 221, 225 (Pa. Cmwlth. 1994), *aff'd*, 669 A.2d 335 (Pa. 1995) (granting a petitioner leave to amend his petition for review to state more specific facts in support of his claim under the Whistleblower Law).

---

[12] Rule 2 E(3) of the Ethical and Professional Conduct Rules of the House of Representatives states "[n]o House employee may be required to perform any task unrelated to the House employee's official duties, on House work time or the employee's own time, as a condition of employment or continued employment."  Rule 2 E(3), https//:www.house.state.pa.us/rules.cfm (last visited March 7, 2024).

## IV. CONCLUSION

As it relates to Petitioner's claim that Respondent violated the Whistleblower Law by terminating Petitioner following her report that Respondent's premises were unsafe or unsanitary, Respondent's demurrer is overruled because we cannot say with certainty that the law will not allow Petitioner to recover. *See Monsanto Co.*, 269 A.3d at 635. As it relates to Petitioner's claim that Respondent committed a wrongdoing by requiring Petitioner to perform a task unrelated to Petitioner's official duties, Respondent's demurrer is sustained because Petitioner failed to allege that she made a report of this alleged wrongdoing. *See O'Rourke*, 778 A.2d at 1200. However, we grant Petitioner leave to amend because Petitioner could potentially allege additional facts that she did make such a report prior to her termination. *See Gray*, 651 A.2d at 225. Accordingly, Respondent's preliminary objections in the nature of a demurrer are overruled in part and sustained in part. Petitioner's first amended petition is dismissed with leave granted to file a second amended petition within 30 days.

LORI A. DUMAS, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marcel Nicole Ingram,
         Petitioner           :
                           :
        v.               :    No. 546 M.D. 2022
                           :
Pennsylvania House Republican  :
Caucus,                     :
         Respondent    :

# **O R D E R**

AND NOW, this 12th day of March, 2024, the Pennsylvania House Republican Caucus' preliminary objections in the nature of a demurrer are OVERRULED in part and SUSTAINED in part. Marcel Nicole Ingram's first amended petition for review, filed January 11, 2023, is dismissed without prejudice and with leave to file a second amended petition within 30 days.

                                 _____
                                 LORI A. DUMAS, Judge