J-A17038-18

2018 PA Super 306

| | | |
|---|---|---|
| KIMBERLY M. GRECO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MYERS COACH LINES, INC., AND | : | |
| A.J. MYERS & SONS, INC. | : | |
| | : | No. 1898 WDA 2017 |
| Appellants | : | |

Appeal from the Judgment Entered November 17, 2017
In the Court of Common Pleas of Westmoreland County
Civil Division at No(s): 6655 of 2012

BEFORE: OTT, J., KUNSELMAN, J., and MUSMANNO, J.

OPINION BY OTT, J.: FILED NOVEMBER 15, 2018

Myers Coach Lines, Inc. and A.J. Myers & Sons, Inc. (collectively, "Myers Coach"), appeal from the judgment of $2,400.00, entered on November 17, 2017, in the Westmoreland County Court of Common Pleas, in favor of Kimberly M. Greco, in this action for wrongful discharge filed pursuant to the Whistleblower Law.[1] On appeal, Myers Coach argues the trial court erred and/or abused its discretion in denying its post-trial motion for judgment notwithstanding the verdict ("JNOV") because (1) Greco failed to establish a prima facie claim under the Whistleblower Law since, (a) there was no report of actual wrongdoing, and (b) Greco was terminated for separate and legitimate reasons; and (2) Greco failed to establish a common law claim for

_____

[1] 43 P.S. §§ 1421-1428.

wrongful discharge. For the reasons below, we are constrained to vacate the judgment, and remand the case for the entry of JNOV in favor of Myers Coach.

The facts underlying Greco's claim are aptly summarized by the trial court as follows:

> In this case, Kim Greco had been employed by Myers [Coach] for 15 years. Her most recent job responsibilities included dealing with safety issues for school bus drivers. Among other things, she checked drivers' credentials and made sure "that everybody was legal to drive." One of the bus drivers, Rich Berardinelli, had a pacemaker inserted on April 4, 2012, so he was unable to drive a bus for a few weeks. On April 27, 2012, Berardinelli wanted to resume driving a school bus, and he produced a waiver form from his cardiologist, dated April 26, 2012, and inquired when he could come back to work. Greco then contacted PennDOT "to find out exactly the rules and regulations of how that would pursue." A representative at PennDOT advised Kim that Berardinelli could not resume his duties as a bus driver until at least two months had passed from the date of the pacemaker surgery. With this information, she told both Berardinelli and a supervisor, Barry Bradosky, that Berardinelli would not be able to resume driving a school bus until June 5, 2012.
>
> Berardinelli then received a document from PennDOT dated May 9, 2012, which appeared to indicate that he met the waiver criteria, so Berardinelli thought he would be able to get back to work as a school bus driver. But concerned with the safety of the company, the safety of the children they transport, and the safety of the driver, Kim contacted PennDOT to confirm that Berardinelli needed to wait until June 5, 2012. Various individuals at PennDOT confirmed this rule. [The record reveals Kim was in contact with individuals at PennDOT, either by phone or fax, on April 27, May 9, May 14, and May 15, 2012.]
>
> When she communicated this fact, Bradosky reacted badly. Kim testified: "He said I ... f'n screwed him over because he needed drivers, and the paper [dated May 9, 2012] was good enough for him. And, in fact I explained that it wasn't legal, and he said the paper was good enough, and he was very upset with me. He told me I stuck my nose in where it didn't belong, but it

was good enough for him." Kim contacted others in the company about the situation: [owners, Bill and David Myers]; [and] Dick Dowdell, a safety consultant[.]

David Myers challenged her, asking what gave her the right to call PennDOT on this issue, apparently disregarding the fact that part of her job was to ensure safety by making sure that drivers were legally permitted to drive. He said: "...[B]efore calling authorities, I want you to get permission from management..." Although Myers ultimately agreed to keep Berardinelli off the road, he threateningly reminded Kim that her predecessor had been fired for "sticking her nose in where it doesn't belong."

Kim's husband, Al Greco, was also employed by Myers. When he heard what had happened, that his wife had been reprimanded for doing what in essence was her job, he confronted and challenged Bradosky in the workplace. The next day, Al was terminated. When Kim found out, she instantly felt sick to her stomach and thought she was going to faint. She told the others in her office what had happened, and her immediate supervisor, Rindy Kenney, gave her permission to leave for the day. That was a Thursday[, May 17, 2012]. On Friday, she also did not go into the office.

At some point between Thursday and Monday morning, Kim heard that she had been terminated. On Monday morning, she called the office to inquire about her status, and she was told she would need to speak to David Myers. Later that morning, Myers called Kim and told her to turn in her keys. In fact, Lynn Palmer, a fellow employee, told Kim that Myers called her Thursday afternoon and offered Kim's job to Lynn.

Trial Court Opinion, 9/29/2017, at 2-4 (record citations omitted).

On November 6, 2012, Greco filed a complaint against Myers Coach,[2]

asserting a claim based upon Pennsylvania's Whistleblower Law, and a

---

[2] The complaint identifies only Myers Coach Lines, Inc. as defendant. However, after David Myers testified at trial that Greco was employed by both Myers Coach Lines and A.J. Myers & Sons, Inc., Greco moved to amend the

common law claim of wrongful discharge.[3]  On January 25, 2013, Myers Coach filed an answer and new matter, asserting, inter alia, Greco was an at-will employee who "was fired because she abandoned the worksite without permission."  Answer and New Matter, 1/25/2013, at ¶ 58.  The case proceeded to a non-jury trial on March 30, 2017, at the conclusion of which the trial court directed the parties to submit written closing arguments. Thereafter, on June 23, 2017, the trial court entered a verdict for Greco in the amount of $2,400.00, plus interest and attorneys' fees.[4]

On July 3, 2017, Myers Coach filed a timely post-trial motion, seeking JNOV.  The trial court denied the motion on September 29, 2017, and this appeal follows.[5]

_____

caption of her complaint.  See N.T, 3/20/2017, at 14.  The trial court granted the motion by order entered June 7, 2017.

[3] We note Greco's husband also filed a wrongful discharge suit against Myers Coach at Docket No. 6656 of 2012.  Greco moved to consolidate the cases for trial, which the court granted on March 18, 2016.  On June 23, 2017, the trial court returned a verdict in favor of Myers Coach in Al Greco's case.  That decision is not before us on appeal.

[4] Following a subsequent hearing, the trial court entered an order on July 27, 2017, awarding Greco's attorney $14,985.00 in attorneys' fees.

[5] Myers Coach's original appeal, filed on October 30, 2017, was quashed sua sponte by this Court without prejudice because no judgment had been entered on the verdict.  See 1632 WDA 2017, Order, 12/14/2017.  Meanwhile, on November 3, 2017, the trial court ordered Myers Coach to file a concise statement of errors complained of on appeal.  See Pa.R.A.P. 1925(b). Thereafter, on November 17, 2017, Myers Coach filed a praecipe for the entry of judgment, and, on November 27, 2017, a Rule 1925(b) concise statement. The instant notice of appeal was timely filed on Monday, December 18, 2017,

On appeal, Myers Coach argues the trial court erred in denying its post-trial motion for JNOV on both counts in Greco's complaint. Our review of such claims is well-established:

> We will reverse a trial court's grant or denial of a [JNOV] only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.
>
> There are two bases upon which a [JNOV] can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

United Envtl. Grp., Inc. v. GKK McKnight, LP, 176 A.3d 946, 959 (Pa. 2017) (quotation omitted). Furthermore, we note:

> The proper standard of review for an appellate court when examining the lower court's refusal to grant a [JNOV] is whether, when reading the record in the light most favorable to the verdict winner and granting that party every favorable inference therefrom, there was sufficient competent evidence to sustain the verdict. Questions of credibility and conflicts in the evidence are for the trial court to resolve and the reviewing court should not reweigh the evidence.

Shamnoski v. PG Energy, Div. of S. Union Co., 858 A.2d 589, 593 (Pa. 2004) (internal citations omitted).

---

since the 30th day after the entry of judgment was Sunday, December 17, 2017. See 1 Pa.C.S. § 1908.

In its first issue, Myers Coach argues Greco did not prove it violated Pennsylvania's Whistleblower Law.  See Myers Coach's Brief at 12-20.  Specifically, it asserts (1) Greco failed to establish Myers Coach committed any wrongdoing, and (2) the evidence, in fact, demonstrated Greco was terminated for separate and legitimate reasons.

"The Whistleblower Law provides protection for employees of a public employer who report a violation or suspected violation of state law."[6]  Bailets v. Pennsylvania Tpk. Comm'n, 123 A.3d 300, 307 (Pa. 2015).  See O'Rourke v. Commonwealth, 778 A.2d 1194, 1202 (Pa. 2001) (describing the Law as "chiefly a remedial measure intended to 'enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing.'") (quotation omitted).  Under the Law, a "whistleblower" is someone who "witnesses or has evidence of wrongdoing or waste while employed and who makes a good faith report of the wrongdoing or waste, verbally or in writing, to one of the person's

_____

[6] Although the Whistleblower Law governs only "public" employers, its definition of an "employer" is broad, and includes a for-profit corporation that "receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body."  43 P.S. § 1422.  In her complaint, Greco alleged Meyers Coach "is in the business of providing bus service to Pennsylvania government bodies, such as school districts."  Complaint, 11/6/2012, at ¶ 3.  In its answer and new matter, Meyers Coach admitted it provides "service in connection with extra-curricular activities for school districts."  Answer and New Matter, 1/25/2013, at ¶ 3.  Accordingly, we conclude Meyers Coach meets the definition of an "employer" under the Whistleblower Law.

superiors, to an agent of the employer or to an appropriate authority." 43 P.S. § 1422. A "wrongdoing" is defined as:

> A violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer.

43 P.S. § 1422.

Moreover, the Law protects a whistleblower who reports a wrongdoing committed by her employer. Section 1423(a) provides:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's ... privileges of employment because the employee ... makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

43 P.S. § 1423(a). In order to prove a violation of the Law, the employee must "show by a preponderance of the evidence that, prior to the alleged reprisal," she "reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority." 43 Pa.C.S. § 1424(b). Furthermore, we note an employer may defend a whistleblower claim if it "proves by a preponderance of the evidence" that it fired the employee for "separate and legitimate reasons, which are not merely pretextual." Id. at § 1424(c).

Here, Myers Coach first maintains Greco's claim must fail because she did not report any "actual wrongdoing" by the company. See Myers Coach's Brief at 15. Rather, it insists Greco's communication with PennDOT employees

was intended to "reconcile inconsistent statements made by PennDOT about a bus driver's eligibility to drive." Id. Further, Myers Coach emphasizes none of its employees violated a law or PennDOT regulation since Berardinelli was not instructed or permitted to drive a bus before he was eligible to do so. See id. Because an "actual violation of the law" is required to establish a whistleblower claim, not simply "a concern that [the employer] might" violate a law or regulation, Myers Coach argues Greco's complaint fails. Id. at 14, 17 (emphasis in original).

The trial court succinctly addressed this issue as follows:

> [Myers Coach] argue[s] that actual "wrongdoing" was not established. We disagree. The employer had a piece of paper in hand that it chose to rely upon and intended to use to justify putting one [of] its driver's (sic) on the road that day. [Greco] strongly suspected – and it turns out she was correct – that putting this driver on the road would have been "wrong." The "wrongdoing" here occurred when the decision-makers at Myers decided they were going to accept the "go ahead" contained in the May 9, 2012 letter from PennDOT. In other words, the "wrongdoing" was the decision to put Berardinelli on the road, despite the fact that they had been told he could not resume his duties until June 5, 2012. When [Greco] put the safety of the driver, the safety of the children, and the reputation of her employer first, by inquiring further of PennDOT, she prevented the negative consequences that may have flowed from the wrongdoing.

Trial Court Opinion, 9/29/2017, at 4-5.

In her appellee brief, Greco concurs with the trial court's analysis that an actual violation of the law need not occur for an employee to establish a claim under the Whistleblower Law. See Greco's Brief at 4. Moreover, she asserts that but for her "relentless efforts of going up the chain of command,

Mr. Berardinelli would have (not could have or might have, but would have) driven the bus illegally." Id. at 6 (emphasis in original). Greco insists the "wrongdoing" she reported "was not a possibility, but was rather a foregone conclusion had she not reported in the way she did." Id. at 7. She further maintains the law does not require an employee to "wait for an illegal activity to occur, but leave an employee who was proactive and prevented an illegal act which was on the verge of taking place to be left without recourse." Id.

Our research has revealed there is a dearth of case law interpreting the Whistleblower Law from this Court and the Pennsylvania Supreme Court, particularly with respect to what constitutes a report of a "wrongdoing" under the statute. Therefore, we may also look to decisions of the Commonwealth Court and federal district courts for guidance, albeit not as binding precedent. See Commonwealth v. Huggins, 68 A.3d 962, 968 (Pa. Super. 2013), appeal denied, 80 A.3d 775 (Pa. 2013); Ford v. Ford, 878 A.2d 894, 900 (Pa. Super. 2005).

In Bailets, supra, the Pennsylvania Supreme Court held the plaintiff/employee presented sufficient evidence that he was fired after reporting a "wrongdoing" in order to survive summary judgment. See id. at 310. In that case, the employee alleged he "made numerous oral and written reports" to both his superior and a co-worker regarding a vendor's "improper access to insider information." Id. at 302. However, both the supervisor and co-worker "admonished him not to report his observations ... or his job would

be in jeopardy." Id. at 308. The employee later brought a whistleblower claim after he was fired.

The Commonwealth Court granted summary judgment to the employer, finding the employee did not report a "wrongdoing by the employer or a violation of a law or code of conduct the employer is charged to enforce for the good of the public." Id. at 303 (internal citation omitted). However, the Supreme Court reversed, concluding:

> [T]he reports [made by the employee] identified that [the employer] implemented a procurement process which unfairly advantaged a vendor with inside information. If true, this would constitute a violation of Pennsylvania's Procurement Code. See 62 Pa.C.S. § 2301[.]

Id. at 308. Therefore, because the employee "presented prima facie evidence of violations of the Whistleblower Law," the Supreme Court vacated the entry of summary judgment in favor of the employer. Id. at 309.

In Riggio v. Burns, 711 A.2d 497 (Pa. Super. 1998) (en banc), appeal dismissed as improvidently granted, 739 A.2d 161 (Pa. 1999), an en banc panel of this Court concluded an employer did not commit a "wrongdoing" as defined in the statute. In Riggio, a neurologist at the Medical College of Pennsylvania reported that the chief of neurosurgery was improperly permitting residents to perform unsupervised procedures on patients, one of whom died as a result. See id. at 498. When she was later fired, the employee brought a whistleblower action. The trial court granted summary judgment in favor of the employer, and the en banc panel affirmed on appeal.

Although the panel lauded the employee's decision to speak out about a practice she believed was ethically improper and fell "below an acceptable standard of medical care," it ultimately concluded she could not state a "cognizable claim under the Whistleblower Law." Id. at 501. Specifically, the Riggio Court found the "regulatory statutes" which the employee asserted her employer violated were "entirely too general and vague to permit the conclusion that a violation had occurred amounting to 'wrongdoing' under the Whistleblower Law." Id.

In Sukenik v. Township of Elizabeth, 131 A.3d 550 (Pa. Commw. 2016), the Commonwealth Court explained what constitutes a report of "wrongdoing" under the Whistleblower Law:

> The report must provide information that is sufficient to identify the law allegedly violated; reports of vague or subjectively wrong conduct are not considered wrongdoing under the Whistleblower Law. The test is objective; it is irrelevant whether an employee believes the employer's conduct constitutes wrongdoing, an actual violation is required. The law that the employer violated must specifically define some prohibited conduct or it cannot be violated in a way that constitutes a "wrongdoing."

Id. at 555-556. See id. (holding employee's complaint that president of Board of Township Commissioners interfered with police department did not constitute report of wrongdoing because, under the township code, commissioners have the power to supervise the police).

Similarly, in Johnson v. Resources for Human Development, Inc., 789 F.Supp. 2d. 595 (E.D. Pa. 2011), a federal district court granted summary judgment in favor of an employer when it determined the employee's

purported "good faith report of illegal activity" did not "specify how what she reported was illegal." Id. at 601. In that case, the employee was the director of a program, which provided employment training for at-risk youth. In July of 2004, she reported to her superiors a rumor that a co-employee was pregnant with the child of a client, who might be underage. See id. at 598. Although the employee insisted the behavior was "inappropriate," her superiors took no further action, and the employee did not report her suspicions to the police or anyone else. Id. at 598-599. The employee was terminated more than four years later, purportedly for behavioral issues. See id. at 600.

In finding the employee failed to identify a "wrongdoing" as contemplated in the Whistleblower Law, the court stated:

> Plaintiff argues that she made a good faith report of illegal activity, but she fails to specify how what she reported was illegal. Rather than addressing her report of [the co-worker who had an inappropriate relationship], Plaintiff's Complaint alleges that [her employer] violated the law by not taking action in response to her report. Plaintiff did not, however, make a report internally or externally about [the employer's] response to her report. Because Plaintiff never reported [her employer], their actions subsequent to her report are irrelevant in identifying the wrongdoing that she reported and for which she now seeks protection.

Id. at 601-602.

Lastly, the federal district court's unpublished decision in Rodriguez v. Sullivan County Victim Services, 2006 WL 952404 (M.D. Pa. 2006), is instructive because the fact pattern is very similar to the case sub judice. In Rodriguez, the employee was the director of Sullivan County Victim Services

("SVCS"). In the fall of 2003, a Pennsylvania State Police corporal demanded she disclose the current location of a client who had applied for a protection from abuse ("PFA") order. See id. at *1. The employee refused to do so because the information was deemed confidential under the PFA Act. When she informed the board of directors of the incident, two board members "pressed [her] to allow some exceptions to [the] confidentiality policy" in order to "further a healthy working relationship between SCVS and the Pennsylvania State Police." Id. at *2. The employee alleged she continued to "be pressured to release confidential information in 2004[,]" and when she refused to do so, one of the board members accused her of "not caring about children" at a board meeting. Id. She was terminated a month later.

The district court concluded the employee could not establish a violation of the Whistleblower Law. The court opined:

> Plaintiff asserts her termination was a direct result of reports she made to the Board of Directors about attempts made by the Pennsylvania State Police and Children and Youth Services to extract confidential information from her in violation of the [PFA Act]. [The employer] argues that Plaintiff cannot make out a prima facie case under the Pennsylvania Whistelblower statute because no wrongdoing occurred.
>
> We agree with [the employer] that Plaintiff cannot establish a prima facie case under the Whistleblower Law because no wrongdoing occurred. While the Pennsylvania State Police and Children and Youth Services may have attempted to persuade Plaintiff to breach statutorily recognized confidentiality provisions, Plaintiff did not succumb to their entreaties. No statutory violation occurred. Therefore, at best from the Plaintiff's perspective only attempted wrongdoing occurred, and any reporting of this conduct by Plaintiff to her superiors cannot be

- 13 -

considered "whistleblowing" as contemplated by the statute.

Id. at *6.

From these decisions, we can discern that, in order to prove a violation of the Whistleblower Law, Greco must demonstrate she made a report of some action by her employer or its agent, which, if proven, would constitute a violation of a law or regulation. Moreover, the report must be of an actual violation, not a potential or contemplated violation. It is for that reason Greco's Whistleblower Law claim fails.

Although Greco contends it was a "foregone conclusion" that Myers Coach would have permitted Berardinelli to resume driving a school bus if she had not intervened,[7] the fact remains that she did intervene, and Berardinelli was not permitted to resume driving before the requisite two-month recovery period. Therefore, while her superiors expressed their dissatisfaction with the regulations, and their skepticism regarding her interpretation of those regulations, such actions do not constitute a "wrongdoing."

Furthermore, it is unclear from the record to whom Greco made a "good faith report" of a "wrongdoing." 43 P.S. § 1423. In her complaint, Greco alleged the following:

> [T]he plaintiff made good faith reports of wrongdoing to PennDOT officials and her superiors concerning [Myers Coach's] repeated attempts to place a medically unqualified school bus driver back on the road.

_____

[7] See Greco's Brief at 7.

Complaint, 11/6/2012, at ¶ 43. However, during her trial testimony, Greco admitted that none of the calls she made or faxes she sent to PennDOT between April 27, 2012, and May 15, 2012, were to report a "wrongdoing" committed by her employer. See N.T., 3/30/2017, at 63-67. See id. at 67 (Greco acknowledging she "never reported a violation of any specific law by Myers [Coach] in [her] communications with PennDOT."). Furthermore, Greco conceded there was no violation of law to report because Berardinelli was never permitted to drive a school bus before the two-month recovery period. See id. at 69. Therefore, according to her own testimony, Greco did not make a report of a "wrongdoing."

Additionally, with regard to her superiors at Myers Coach, Greco failed to establish she reported a "wrongdoing" to them. To the extent she implies Berardinelli committed a "wrongdoing" when he presented to his superiors the May 9, 2012, letter from PennDOT, which stated he was once again eligible to drive based on the results of his cardiovascular examination,[8] we disagree. Greco, herself, testified a representative from PennDOT admitted the waiver Berardinelli presented was mailed to him in error. See id. at 41. Greco relayed she was told that PennDOT was "so overwhelmed, and it was kind of … lost in the mail," and rather, the waiver pertained "to his original cardiac issues that he gets renewed every November," not the pacemaker surgery. Id. Accordingly, it was reasonable for both Berardinelli and his supervisor at

_____

[8] See Plaintiff's Exhibit 2, Letter dated 5/9/2012, from Bureau of Driver Licensing to Berardinelli.

Myers Coach to question whether the information Greco received from PennDOT was correct. Moreover, although Greco believed her superiors "implied" she should break the law when they told her "to keep [her] nose out of [Berardinelli's] business," she conceded no one at Myers Coach "actually asked [her] to do anything to break the law[.]" Id. at 69, 80. Furthermore, Greco never reported this contemplated "wrongdoing" by her employer to anyone.

Consequently, we are compelled to conclude Greco failed to establish a violation of the Whistleblower Law based on Myers Coach's termination of her employment. Although we agree with Greco that Myers Coach should have been grateful for her persistence in preventing one of its school bus drivers from taking the road when it may have been unsafe for him to do so, we find we are constrained by the language of the Law. Indeed, while it seems reasonable that the Whistleblower Law should protect an employee who, as here, preemptively prevented its employer from committing a violation of the law, the judicial decisions applying the statute do not permit such an interpretation under the facts of this case.[9]

Nevertheless, we note Greco also included a separate claim in her complaint for common law wrongful discharge. See Complaint, 11/6/2012, at ¶¶ 47-56. In the order entering a verdict for Greco, the trial court did not

_____

[9] Because we conclude Greco did not establish she reported a "wrongdoing" prior to her termination, we need not address Myers Coach's defense that it fired Greco for "separate and legitimate reasons, which are not merely pretextual." 43 P.S. § 1424(c).

specify which count of the complaint it found Greco had proven. See Order, 6/23/2017. Although it appears from the court's discussion in its opinion that it entered judgment on Greco's Whistleblower Law claim, in an abundance of caution, we will briefly address her wrongful discharge claim.

It is well-settled that Pennsylvania is an at-will employment state, so that, "absent a statutory or contractual provision to the contrary, either party may terminate an employment relationship for any or no reason." Weaver v. Harpster, 975 A.2d 555, 562 (Pa. 2009). Consequently, the following rule of law has evolved:

> An employee may bring a cause of action for a termination of that relationship only in the most limited circumstances, where the termination implicates a clear mandate of public policy. In our judicial system, the power of the courts to declare pronouncements of public policy is sharply restricted.

Id. at 563. This Court has summarized the limited "public policy" exceptions to the at-will employment doctrine as follows:

> In sum, "an employer (1) cannot require an employee to commit a crime, (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when [specifically] prohibited from doing so by statute." Outside of those categories of our legislature's expression of public policy, a court may find a public policy exception that will sustain a wrongful termination action only if the public policy "is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it."

Mikhail v. Pennsylvania Org. for Women in Early Recovery, 63 A.3d 313, 317 (Pa. Super. 2013) (internal citations omitted).

- 17 -

We conclude Greco's termination in the present case, assuming it was based solely on her inquiries to PennDOT concerning Berardinelli's eligibility to return to work, does not violate any of the limited "public policy" exceptions to the at-will employment doctrine, which have been recognized by the courts of this Commonwealth. See id. Although we sympathize with Greco's contention that she was fired for simply doing her job, we reiterate an employer may fire an at-will employee for any reason or for no reason. Accordingly, while we may agree Greco's employer acted vindictively, and exhibited poor business judgment, we find Greco is entitled to no relief with regard to her cause of action for common law wrongful discharge.

Because Greco failed to establish either cause of action alleged in her complaint, we are constrained to vacate the judgment and remand for the entry of JNOV in favor of Myers Coach.

Judgment vacated. Case remanded for entry of JNOV in favor of Myers Coach. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  11/15/2018