J-A14027-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SABRINA LEISER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THE CHESTER VALLEY GOLF CLUB | : | No. 2525 EDA 2023 |

Appeal from the Order Entered September 22, 2023
In the Court of Common Pleas of Chester County
Civil Division at No:  2023-02452-CT

BEFORE:  LAZARUS, P.J., STABILE, J., and LANE, J.

MEMORANDUM BY STABILE, J.:                **FILED DECEMBER 2, 2024**

Appellant, Sabrina Leiser, appeals from an order sustaining the preliminary objection in the nature of a demurrer of Appellee, the Chester Valley Golf Club ("CVGC"), and dismissing her action for wrongful discharge. Appellant worked for CVGC as an events coordinator.  Appellant argues that CVGC discharged her in retaliation for reporting to the Pennsylvania Bureau of Liquor Control Enforcement ("BLCE") that a fellow employee violated the Liquor Code by consuming alcohol while bartending.  We affirm.

On April 4, 2023, Appellant filed a one-count complaint against CVGC claiming common law wrongful discharge.  On June 13, 2023, Appellant filed an amended complaint in which she alleged the following.  Appellant worked for CVGC from October 2021 until December 20, 2022, the date of her termination.  Complaint at ¶ 6.  During her employment, Appellant held the

position of Events Coordinator. *Id.* at ¶ 7. In her role, Appellant reported directly to Ashley Heath, CVGC's Food and Beverage Manager. *Id.* at ¶ 9.

On November 30, 2022, Mike Stabinski, CVGC's Maintenance Supervisor, showed Appellant multiple videos recorded by the club's security cameras that depicted Steve Cantrell, a CVGC bartender, consuming alcohol while bartending on several different occasions in violation of the Pennsylvania Liquor Code. *Id.* at ¶ 10 (citing 47 P.S. § 4-493(28) ("It shall be unlawful . . . [f]or any licensee, his servants, agents or employees, to consume liquor or malt or brewed beverages while tending bar or otherwise serving liquor or malt or brewed beverages")). Later that day, Stabinski showed the same videos of Cantrell to Kathleen McGarry, CVGC's Controller, and Tonita Brooks, CVGC's Human Resources Manager. McGarry and Brooks told Appellant in a subsequent discussion that they intended to report Cantrell's unlawful activity to both Heath (Appellant's supervisor) and CVGC's Board of Directors. *Id.* at ¶ 13. On December 1, 2022, Brooks and McGarry reported Cantrell's unlawful activity to Heath and the Board of Directors. *Id.* at ¶ 14. The next day, McGarry told Appellant that neither Heath nor the Board of Directors appeared willing to take any corrective action regarding Cantrell's unlawful activity. *Id.* at ¶ 15. In fact, McGarry told Appellant that Heath instead brushed her report aside as insignificant and a non-issue. *Id.*

On December 2, 2022, based on CVGC's failure to take remedial action, and her view that Cantrell's actions placed the safety of CVGC's patrons and members at risk, Appellant reported Cantrell's unlawful conduct to the BLCE.

*Id.* at ¶ 17. Pennsylvania law charges the BLCE—a division of the Pennsylvania state police—with enforcing the Pennsylvania Liquor Code. *Id.* Appellant made her report to the BLCE by email and telephone call. *Id.* at ¶ 18. In her report, Appellant also told the BLCE that CVGC failed to take corrective action against Cantrell despite being in possession of video evidence proving his culpability. *Id.*

On December 20, 2022, Samantha Stambaugh, a Liquor Enforcement Officer for the BLCE, contacted Heath by telephone to discuss Appellant's report of Cantrell's unlawful conduct. *Id.* at ¶ 20. Stambaugh also informed Heath that the BLCE had opened an investigation into the matter and further advised that she intended to inspect CVGC's premises in short order. *Id.* Appellant overheard this discussion between Stambaugh and Heath from an adjacent office wherein Heath repeatedly lied to Stambaugh on the call about her knowledge of Cantrell's unlawful conduct. *Id.* at ¶ 21. About one hour following her call with the BLCE, Heath abruptly instructed Appellant to meet in her office, with Cantrell present. *Id.* at ¶ 22.

During this meeting, Heath terminated Appellant's employment, effective immediately. *Id.* at ¶ 23. Heath stated that Appellant's termination was due to an improper "tip" that Appellant accepted following an event on CVGC's premises in October 2022. *Id.* at ¶ 24. However, Appellant followed CVGC's protocol for accepting tips on that occasion. *Id.* at 25. Appellant had also similarly accepted tips following other events hosted by CVGC without objection from Heath. *Id.* Even after Appellant informed Heath that she

followed CVGC's protocol for accepting the October 2022 tip, Heath refused to reverse the termination decision. *Id.* at ¶ 26. At no time before she reported Cantrell's unlawful conduct to the BLCE had Appellant been accused by CVGC of performance deficiencies or policy violations related to accepting tips on the job. *Id.* at ¶ 27.

Based on these factual averments, Appellant claimed that CVGC "violated a clear mandate of public policy of the Commonwealth of Pennsylvania" by terminating her for reporting to the BCLE that Cantrell consumed alcohol while bartending. *Id.* at ¶ 43. The source of this "clear mandate of public policy" of Pennsylvania, the amended complaint said, are the websites of the BLCE and the Pennsylvania Liquor Control Board ("PLCB"). *Id.* at ¶¶ 35-40. Both websites include information on how to report a violation of the Pennsylvania Liquor Code and provide forms for filing violation reports. *Id.*

The PLCB's "Report Fraud or Abuse" website form states in relevant part:

> Fine Wine & Good Spirits customers, PLCB employees and licensees are encouraged to report any fraudulent or inappropriate behavior witnessed or suspected at any Fine Wine & Good Spirits store, PLCB office or distribution center. Examples of reportable misconduct include theft of funds or property; kickbacks or acceptance of tips; solicitation of funds or products; abuse of authority; and retaliation against anyone reporting fraud or abuse.

*Id.*,Exhibit 1. The PLCB's website also indicates that "[t]he Pennsylvania Whistleblower Law protects anyone who reports wrongdoing or waste –

including Fine Wine & Good Spirits customers, PLCB employees and licensees – from discrimination or retaliation based on the report" to the PLCB. *Id.*

The BCLE's website also provides a form for submitting reports of alleged violations of the Pennsylvania Liquor Code. *Id.*, Exhibit 2. The BCLE form provides that information submitted "is confidential and complaints may be submitted anonymously," and that information "will be kept confidential and will assist the investigation." *Id.* Other than anonymity, the BCLE form does not indicate any "whistleblower" or similar protection relating to reports.

On July 3, 2023, CVGC filed preliminary objections to the amended complaint in the nature of a demurrer asserting that Appellant failed to state a cause of action. On September 22, 2023, the trial court sustained the preliminary objections and dismissed Appellant's amended complaint. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues in this appeal:

1. Did the trial court err in sustaining CVGC's preliminary objections to [Appellant]'s first amended complaint on the grounds that [Appellant] failed to state a claim for common law wrongful discharge in violation of Pennsylvania public policy?

2. Did the trial court err in sustaining CVGC's preliminary objections to [Appellant]'s first amended complaint on the grounds that [Appellant]'s termination for reporting a Pennsylvania Liquor Code violation to the Pennsylvania Bureau of Liquor Control Enforcement did not constitute a viable public policy exception to the Pennsylvania at-will employment doctrine?

3. Did the trial court err in sustaining CVGC's preliminary objections to [Appellant]'s first amended complaint on the

grounds that CVGC's termination of [Appellant]'s employment did not violate a clear mandate of Pennsylvania public policy?

Appellant's Brief at 2-3. We review these issues together because they all raise the same question: whether the amended complaint states a valid cause of action for wrongful discharge. We conclude that it does not.

In conducting our review, we apply the following principles:

As a trial court's decision to sustain or overrule a demurrer involves a matter of law, our standard for reviewing that decision is plenary. Preliminary objections in the nature of demurrers are proper when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint. Moreover, when considering a motion for a demurrer, the trial court must accept as true all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts.

Furthermore, our standard of review of an order of the trial court overruling or sustaining preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

***R.A. Greig Equip. Co. v. Mark Erie Hosp., LLC***, 305 A.3d 56, 59 (Pa. Super. 2023) (citations omitted; cleaned up).

Pennsylvania is an at-will employment state. The general rule is that an employer or employee may end an employment relationship for any reason

or for no reason at all. ***Geary v. U.S. Steel Corp.***, 319 A.2d 174, 176 (Pa. 1974). "Exceptions to this general rule have been recognized in only the most limited circumstances, where discharges of at-will employees would threaten clear mandates of public policy." ***Weaver v. Harpster***, 975 A.2d 555, 557 n.3 (Pa. 2009); ***Clay v. Advanced Computer Applications***, 559 A.2d 917, 918 (Pa. 1989). Generally, the power to establish these mandates of public policy rests with the legislature, not the courts. ***Weaver***, 975 A.2d at 563. Therefore, the public policy exceptions to the at-will employment doctrine are limited to situations "where the wrongful discharge claims have involved infringements on statutory and constitutional rights." ***Id.***

Pennsylvania courts recognize only a few limited public policy exceptions to the at-will employment doctrine. Specifically, an employer cannot: (1) require an employee to commit a crime; (2) prevent an employee from complying with a statutorily imposed duty; and (3) discharge an employee when specifically prohibited from doing so by statute. ***Greco v. Myers Coach Lines, Inc.***, 199 A.3d 426, 436 (Pa. Super. 2018). An employer's violation of any of these exceptions gives rise to an action at common law for wrongful discharge. ***Id.*** "Outside of those categories of our legislature's expression of public policy, a court may find a public policy exception that will sustain a wrongful termination action only if the public policy is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it." ***Id.*** (citation and quotation marks

omitted).

In several contexts, the legislature has expressly prohibited retaliation against employees who report suspected violations of law. For example, the Pennsylvania Whistleblower Law prohibits public employers from retaliating against employees for making good-faith reports of suspected wrongdoing or waste. **See** 43 P.S. §§ 1422, 1423. In addition, private employers are prohibited from retaliating against employees for making complaints or participating in proceedings under the Equal Pay Law. **See** 43 P.S. § 336.8(a). The legislature also has prohibited private employers from retaliating against individuals who make reports to the Department of Labor and Industry under the Construction Workplace Misclassification Act. **See** 43 P.S. § 933.10(a). The legislature has enacted a similar prohibition relating to employees who oppose discriminatory practices, or file charges or participate in proceedings under the Pennsylvania Human Relations Act. **See** 43 P.S. § 955(d). Private employers also may not retaliate against an employee who files a complaint or participates in proceedings relating to commercial motor vehicle safety standards. **See** 43 P.S. § 1431(a).

Thus, when an employee performs his statutory duty to report wrongdoing, she has a cause of action for wrongful discharge if her employer terminates her employment in retaliation for the report. **See Field v. Philadelphia Electric Company**, 565 A.2d 1170, 1172-73, 1180 (Pa. Super. 1989) (employee stated valid cause of action for wrongful discharge by

alleging that employer terminated him in retaliation for performing statutory duty of reporting suspected violations of federal Energy Reorganization Act to Nuclear Regulatory Commission).

In contrast, Pennsylvania courts have repeatedly rejected common law wrongful discharge claims where the employer terminates the employee for reporting suspected violations of law when the employee was not statutorily required to do so. *See*, *e.g.*, *Geary v. U.S. Steel Corp.*, 319 A.2d 174, 180-81 (Pa. 1974) (no wrongful discharge claim where employee complained to superiors about substandard and potentially unsafe quality of employer's product but did not have statutory duty to do so); *Donahue v. Federal Exp. Corp.*, 753 A.2d 238, 244 (Pa. Super. 2000) (employee who alleged that workers should not be fired from private companies for reporting unscrupulous practices failed to state claim for wrongful discharge under public policy exception to at-will employment doctrine, absent identification of relevant statutes or legal precedents indicating that such retaliation violated public policy); *Spierling v. First Am. Home Health Servs. Inc.*, 737 A.2d 1250, 1252–54 (Pa. Super. 1999) (affirming dismissal of common law wrongful termination claim where employee reported alleged Medicare fraud but did not have statutory duty to do so); *Hunger v. Grand Cent. Sanitation*, 670 A.2d 173, 175–76 (Pa. Super. 1995) (affirming dismissal of common law wrongful discharge claim where employee reported suspected illegal transport of hazardous materials without license but did not have statutory duty to do so);

*Holewinski v. Children's Hosp. of Pittsburgh*, 649 A.2d 712, 715 (Pa. Super. 1994) (no wrongful discharge claim where employee voiced concerns over abilities of her newly-hired supervisor but did not have statutory duty to do so); *Krajsa v. Keypunch, Inc.*, 622 A.2d 355, 359–60 (Pa. Super. 1993) (no wrongful discharge claim where employee reported that employer overbilled on contract but did not have statutory duty to do so).

Under these precedents, Appellant has no right of action for wrongful discharge. Appellant's amended complaint, accepted as true, does not satisfy the first three public policy exceptions to the at-will employment doctrine articulated in *Greco*. Appellant does not allege that CVGC required her to commit a crime. Nor does she allege that CVGC prevented her from complying with a statutorily imposed duty. Indeed, the Liquor Code does not require employees of a licensee to report suspected violations of law. Nor does the Liquor Code prohibit CVGC from terminating an employee for reporting a Code violation.

Under the final public policy exception to the at-will doctrine, a right of action exists if the employee's termination is "against public health, safety, morals, or welfare" such that "that there is a virtual unanimity of opinion in regard to it." Greco, 199 A.3d at 436. Citing a series of Liquor Code provisions, government websites, and appellate decisions, Appellant contends that her termination runs afoul of this exception. We disagree.

- 10 -

Appellant begins by quoting Section 1-104 of the Liquor Code, which provides, "This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth . . ." 47 P.S. § 1-104(a). Next, Appellant refers us to another statute in the Liquor Code that makes it "unlawful" for bartenders of licensees to consume alcohol while tending bar or serving alcohol. 47 P.S. § 4-493(28). Neither of these provisions, however, expressly state or suggest that terminating an employee of a licensee for reporting a Liquor Code violation is against public policy.

Next, Appellant observes that the BLCE's and PLCB's websites encourage citizens to report Liquor Code violations. Our Supreme Court, however, has limited "the public policy of the Commonwealth" to "our own Constitution, court decisions, and statutes promulgated by the legislature." **Weaver**, 975 at 563. Since pronouncements on government websites fall outside of these authorities, they do not constitute public policy and cannot support Appellant's cause.[1]

Finally, Appellant contends that three cases support the creation of a new public policy exception to the at-will employment doctrine under the

_____

[1] We also note that the PLCB's website appears to contain an inaccuracy. This website states that Pennsylvania's Whistleblower Law protects citizens who report such violations from retaliation. This statement is incorrect as to private employees such as Appellant. The Whistleblower Law only protects public employees from retaliation by public employers for reporting suspected wrongdoing or waste. 43 P.S. §§ 1422, 1423.

Pennsylvania Liquor Code: ***Woodson v. AMF Leisureland Centers, Inc.***, 842 F.2d 699 (3d Cir. 1988); ***Shick v. Shirey***, 716 A.2d 1231 (Pa. 1998); and ***McLaughlin v. Gastrointestinal Specialists, Inc.***, 750 A.2d 283 (Pa. 2000). None of these cases supports Appellant's position. In ***Woodson***, the plaintiff/employee was fired for refusing to serve alcohol to an intoxicated patron, a crime under the Liquor Code. *See* 47 P.S. § 4-493(1) (making it unlawful for employee of licensee to furnish or give liquor to visibly intoxicated person). The jury awarded the plaintiff compensatory damages for wrongful discharge, but the district court held that she was not entitled to punitive damages. The Third Circuit reversed and remanded for a new trial on the issue of punitive damages. ***Woodson*** is distinguishable from the present case because the plaintiff in ***Woodson*** had a valid cause of action under a recognized exception to the at-will employment doctrine: an employer cannot discharge an employee for refusing to commit a crime. Presently, CVGC terminated Appellant for reporting a coworker's alleged misconduct, not for refusing to commit a crime.

In ***Shick***, our Supreme Court held that the plaintiff stated a valid cause of action for wrongful discharge by alleging in his complaint that his employer terminated him in retaliation for exercising his statutory right to seek workers' compensation benefits. The plaintiff's action fell within a recognized exception to the at-will employment doctrine under which an employer cannot terminate an employee for exercising his statutory rights under the Workers'

Compensation Act. In the present case, however, there is no statute in the Liquor Code that bestows Appellant with the right or duty to report suspected violations. Nor is there any statute that protects Appellant from termination for reporting any such violation. Indeed, the outcome that Appellant seeks here flies in the face of a line of appellate precedents that prohibit wrongful discharge actions where the employee is terminated for reported suspected violations when she is not statutorily required to do so. *See Geary*, *Donahue*, *Spierling*, *Hunger*, *Holewinski*, *Krajsa*, *supra*.

Lastly, in *McLaughlin*, the employee was terminated for allegedly complaining to her employer that it was violating federal Occupational Safety and Health Act ("OSHA") regulations. Our Supreme Court held that the employee did not establish a violation of Pennsylvania public policy because: (1) federal administrative regulations, standing alone, do not establish a public policy of the Commonwealth; and (2) she did not make a complaint to a Commonwealth agency. *McLaughlin*, 750 A.2d at 288. Similarly, in the present case, there is no public policy—that is, no constitutional authority, no statute, and no court decision, *Weaver*, *supra*—that gives rise to an action for wrongful discharge.

For these reasons, we affirm the trial court's order dismissing Appellant's action for wrongful discharge.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/2/2024