NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2182
_____

SEAN PECK,
Appellant

v.

LIEUTENANT MEGAN BOLOGNONE;
DEPUTY COMMISSIONER KRISTA DAHL-CAMPBELL;
CHIEF INSPECTOR MICHAEL COCHRANE
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:23-cv-03213)
District Judge: Honorable Paul S. Diamond
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 9, 2025

Before: HARDIMAN, PORTER, and FISHER, *Circuit Judges*.

(Filed: May 1, 2025)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FISHER, *Circuit Judge*.

This appeal arises out of an employment dispute between Appellant Sean Peck and his former superiors in the Philadelphia Police Department, Appellees Lieutenant Megan Bolognone and Deputy Commissioner Krista Dahl-Campbell. The District Court granted Appellees' motion for summary judgment on the claims Peck asserted under the First Amendment and the Pennsylvania Whistleblower Law.[1] Peck now appeals. We will affirm.[2]

## A. First Amendment Retaliation Claim

"Speech by government employees receives less protection than speech by members of the public."[3] To prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983, "a public employee must [first] show that his speech is protected by the First Amendment and that the speech was a substantial or motivating factor in what is alleged to be the employer's retaliatory action."[4] Peck's claims fail because he does not

---

[1] U.S. Const. amend. I; 43 Pa. Stat. §§ 1421–28.

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343(a)(3) (jurisdiction to redress the deprivation of a right secured by the Constitution), and 1367 (supplemental jurisdiction over state-law claims). We have jurisdiction under 28 U.S.C. § 1291 (final decisions of district courts). We review de novo an appeal from a court's grant of a motion for summary judgment. *In re Processed Egg Prods. Antitrust Litig.*, 881 F.3d 262, 267 (3d Cir. 2018).

[3] *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 103 (3d Cir. 2022).

[4] *Flora v. Cnty. of Luzerne*, 776 F.3d 169, 174 (3d Cir. 2015).

establish protected speech.[5]

For speech to be protected, a public employee must "[speak] as a private citizen."[6] Key to this determination is whether the employee spoke "pursuant to [his] official duties,"[7] and "whether the speech at issue is itself ordinarily within the scope of [the] employee's duties, not whether it merely concerns those duties."[8] If within the scope of the duties, "the Constitution does not insulate [those] communications from employer discipline."[9]

Peck's emails are unprotected because they concern his sergeant duties. Neither email mentions issues outside his official responsibilities. Instead, they describe disputes regarding attendance, a matter within Peck's official duties of completing assignment sheets and attendance reports, handling staffing issues, and ensuring officer timeliness. Practically speaking, dealing with attendance was "part of the work [Peck] was paid to perform on an ordinary basis."[10]

Even if we read into the emails a cognizable report of fraud, which is otherwise absent from the record, Peck's speech is unprotected. Peck testified that "part of the

---

[5] *See Bradley v. W. Chester Univ. of Pa. State Sys. of Higher Educ.*, 880 F.3d 643, 650 (3d Cir. 2018) (where the Court first concludes the speech is not constitutionally protected, it need not second consider the government's action).

[6] *Fenico v. City of Philadelphia*, 70 F.4th 151, 162 (3d Cir. 2023).

[7] *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

[8] *Lane v. Franks*, 573 U.S. 228, 240 (2014).

[9] *Garcetti*, 547 U.S. at 421.

[10] *Flora*, 776 F.3d at 180; *see also Garcetti*, 547 U.S. at 424.

reason" he established the Standard Operating Procedure "was to eliminate overtime fraud," and "it was very important to [him] that . . . [his] officers and specifically corporals weren't indicted on . . . overtime fraud charges."[11] Peck cannot acknowledge that it was his responsibility to stop overtime fraud while simultaneously urging that reporting such fraud to superiors was not his responsibility.[12] Peck was required to enforce unit procedure—whether directly or through delegation—which renders the emails within his official duties and, thus, not protected speech.[13]

We are similarly unpersuaded by Peck's contention that his emails are protected because they went multiple levels up the chain of command. Complaints up the chain of command typically qualify as speech within an employee's official duties.[14] This is true both of Peck's February 20 emails to his direct superior, Bolognone, and February 23 email to Dahl-Campbell, five levels his superior. Communicating concerns only to superiors in a chain of command about workplace matters within one's duties is different from, for example, additionally raising those concerns outside the workplace where not under order.[15] Peck emailed only those within his chain of command about matters squarely pursuant to his employment duties.

---

[11] D. Ct. Dkt. 29-5 at 156.

[12] *See Bradley*, 880 F.3d at 653 (the First Amendment did not protect a budget director who raised concerns of fraud at an internal meeting).

[13] *See Foraker v. Chaffinch*, 501 F.3d 231, 240 (3d Cir. 2007), *abrogated on other grounds by Borough of Duryea v. Guarnieri*, 564 U.S. 379, 383 (2011).

[14] *Id.* at 238, 240–41.

[15] *Cf. id.* at 243.

Viewing the facts in the light most favorable to Peck,[16] he fails to show a genuine dispute of material fact about whether he spoke as a private citizen, rendering summary judgment appropriate on his First Amendment claim.[17]

### B. Pennsylvania Whistleblower Law Claim

Peck also fails to establish his whistleblower claim. The Pennsylvania Whistleblower Law prohibits an employer from "retaliat[ing] against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee . . . makes a good faith report . . . to the employer or appropriate authority [of] an instance of wrongdoing."[18] A plaintiff may recover under 43 Pa. Stat. § 1424 where he "show[s], by a preponderance of the evidence, that, prior to the alleged acts of retaliation, he had made a good faith report of wrongdoing [or waste] to appropriate authorities" and he "come[s] forward with some evidence of a connection between the report . . . and the alleged retaliatory acts."[19]

First, Peck's emails were not a "good faith report," or "[a] report of conduct . . . made without malice or consideration of personal benefit and which [he] ha[d] reasonable cause to believe [was] true."[20] Further, Peck's emails do not assert "wrongdoing," or "[a]

---

[16] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).
[17] *See* Fed. R. Civ. P. 56(a).
[18] 43 Pa. Stat. § 1423(a).
[19] *O'Rourke v. Commonwealth*, 778 A.2d 1194, 1200 (Pa. 2001) (citing 43 Pa. Stat. § 1424(b)). Like the District Court, we analyze Peck's claim only under a "wrongdoing" theory because he does not make a "waste" argument.
[20] 43 Pa. Stat. § 1422.

5

violation which is not of a merely technical or minimal nature of" a statute, regulation, ordinance, or code of conduct or ethics.[21] The February 20 emails make no mention of time theft or wire fraud. They do not specify a law or ordinance allegedly violated but instead describe incidents of officers wanting to leave early. Peck admitted that, including during those incidents, he did not observe anyone "actually le[ave] the building and commit[] time fraud, or overtime fraud."[22] Because these violations were "potential or contemplated" as opposed to "actual,"[23] this report is not protected.[24]

Second, even if the emails were a good faith report, Peck's claim fails on causation. A plaintiff must "show by concrete facts or surrounding circumstances"[25] that the report led to his dismissal or other retaliatory action, "such as that there was specific direction or information . . . received not to file the report or [that] there would be adverse consequences because the report was filed."[26] Causation may be proven through evidence of an usually suggestive "temporal relationship between the protected activity and the retaliatory [action] and/or a pattern of antagonism perpetrated by the employer in the

---

[21] *Id.*

[22] D. Ct. Dkt. 29-10 at 111.

[23] *See Greco v. Myers Coach Lines, Inc.*, 199 A.3d 426, 434 (Pa. Super. Ct. 2018).

[24] *See Sukenik v. Twp. of Elizabeth*, 131 A.3d 550, 555–56 (Pa. Commw. Ct. 2016).

[25] *Gray v. Hafer*, 651 A.2d 221, 225 (Pa. Commw. Ct. 1994), *aff'd*, 669 A.2d 335 (Pa. 1995).

[26] *Golaschevsky v. Com., Dep't of Env't Prot.*, 720 A.2d 757, 759 (Pa. 1998) (alteration in original) (quoting *Gray*, 651 A.2d at 225).

period between the [report] and the adverse employment consequence."[27] A plaintiff

cannot establish causation without proof that the defendant knew of the report.[28]

Peck identifies as purportedly retaliatory employment actions: three counseling

memoranda, his "Five-Month Report," and "the Rejection from Probation Report[,]

which resulted in [his] demotion."[29] None of these actions meet the requisite standard.

At the threshold, the three counseling memoranda are not retaliatory because the

Department uses them "as a tool for training employees and does not consider them to be

disciplinary actions."[30] This purpose, coupled with Peck's failure to produce objective

evidence showing the memoranda negatively affected him, demonstrate that Peck was not

being reprimanded through their issuance.[31]

Peck fails to show the remaining two actions—his five-month performance

evaluation by Bolognone and ultimate rejection from probation—are causally linked to

---

[27] *Javitz v. Luzerne Cnty.*, 293 A.3d 570, 585 n.20 (Pa. 2023) ("While state court case law analyzing the sufficiency of the evidence of the causal connection between post-reporting antagonistic workplace treatment and retaliatory discharge of a whistleblower is scant, cases involving the PHRA, Title VII and First Amendment retaliation claims utilize an essentially identical analytical framework . . . .").

[28] *See Daniels v. Sch. Dist. of Phila.*, 776 F. 3d 181, 196 (3d Cir. 2015).

[29] Appellant's Br. 5, 17.

[30] *Rosati v. Colello*, 94 F. Supp. 3d 704, 718 (E.D. Pa. 2015) (quoting *Torres v. Deblasis*, 959 F. Supp. 2d. 772, 781 (E.D. Pa. 2013)); *see also* D. Ct. Dkt. 29-10 at 33–34 (Peck recognizing counseling memoranda are "generally considered an opportunity to identify employees['] strengths and weaknesses").

[31] *Javitz*, 293 A.3d at 582 (A plaintiff cannot establish a causal connection by "rely[ing] on his [own] perception of the facts to support a conclusion that the employer engaged in antagonistic conduct after the report.").

his report. "In a Whistleblower Law action, the mere fact that the discharge occurred a few months after a report of wrongdoing and that the first formal negative actions by the employer occurred after the report are *not* enough to show a causal connection."[32] Peck argues only temporal proximity, which does not independently prove causation.[33] But there is no pattern of retaliation, either. Causation is not established where an employer gave similarly negative performance evaluations both before and after protected conduct.[34] Here, the record contains evidence, beginning before the emails and continuing after, that supports Peck's poor evaluation and rejection from probation. For example, Bolognone submitted a request to discipline Peck for undermining an officer and disobeying orders, as well as a request to detail Peck to another unit; Peck had interpersonal issues with officers; and his interactions with prisoners raised safety concerns. We cannot infer that Peck's report triggered a pattern of retaliatory action.

Finally, Peck fails to offer evidence that Dahl-Campbell was involved in the alleged retaliation. Peck argues only that, following his February 23 email, Dahl-

---

[32] *Evans v. Thomas Jefferson Univ.*, 81 A.3d 1062, 1070–71 (Pa. Commw. Ct. 2013); *see also Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (days are "unusually suggestive of retaliatory motive" but months are not (citation omitted)), *superseded by statute on other grounds as recognized in Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 188 n.30 (3d Cir. 2019).

[33] *See Evans*, 81 A.3d at 1070–71; *see also Golaschevsky*, 720 A.2d at 758–60 (evidence of an adverse action taken four months after a report of wrongdoing was insufficient to survive summary judgment where the employee failed to meet minimum performance standards).

[34] *Shaner v. Synthes*, 204 F.3d 494, 504–05 (3d Cir. 2000).

8

Campbell ensured that Bolognone would conduct his review. This is not a "materially adverse" employment action, as Dahl-Campbell simply ensured that the individual who oversaw Peck for nearly his entire probationary period wrote the evaluation, rather than a new supervisor who was less familiar with him.[35]

Peck's whistleblower claim fails on both prongs, rendering summary judgment appropriate.

\*    \*    \*

A reasonable jury could not conclude that Peck engaged in activity protected by the First Amendment or the Pennsylvania Whistleblower Law. For the foregoing reasons, we will affirm.

---

[35] *See Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001) (two written reprimands were not an adverse employment action where the plaintiff suffered no direct negative consequence), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).